In the Matter of the Estate of GEORGE B. McGINNIS, Deceased.

Surrogate's Court, New York County, December 15, 1943.

*George J. Gillespie, Jr.,* for Mary Meehan and another, as executors of Hugh F. McGinnis, deceased, and another, petitioners.

*George B. Fargis* for Novitiate of St. Andrew-on-Hudson, respondent.

*James J. O'Connell* for Society for the Propagation of the Faith, respondent.

*Henry S. Michaelson* for North River Savings Bank, respondent.

DELEHANTY, S. Deceased's will created a trust limited on the life of his brother. It named the brother as trustee and named as cotrustee a banking institution. Among the assets of the trust was an undivided interest in real property. That real property was never sold by the trustees but was on hand at the death of the brother of deceased which occurred January 19, 1943. Accordingly the real property passed to the remaindermen, at the termination of the trust, by reason of the terms of the will. The question now presented is whether the value of the real property is to be taken into account in the computation of the commissions of the surviving trustee. The law on the subject of real estate values as basis for commissions was well settled so long as trustees looked to section 285 of the Surrogate's Court Act as the source of their rights. It is necessary to consider whether the new section 285-a of the Surrogate's Court Act altered the basis for compensation of trustees in relation to real estate.

Subdivision 5 of section 285 of the Surrogate's Court Act provides: " The value of any real or personal property, to be determined in such manner as the surrogate may direct, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions. But this shall not apply in case of a specific legacy or devise." Section 285-a provides in subdivision 3: " The value of any real or personal property shall be considered as money in making computation of commissions hereunder." The quoted sentence is the last sentence in subdivision 3 which otherwise prescribes the computation of minimum principal commissions. These computations are to be made on the basis of " principal distributed ". In the sentence just preceding the quoted sentence there is direction that the rates prescribed in subdivision 3 shall be applied only after giving consideration to the total amount " of any previous distributions of principal." The whole subdivision relates to a testamentary trustee " who is acting at a time of distribution of principal ". It is clear beyond peradventure that only principal *distributed by the fiduciary* is the base for minimum principal commissions.

It had long been settled law that an executor is entitled neither to receiving nor paying-out commissions on real property in the usual case since he neither receives nor distributes it. In the usual case title to realty vests directly in the devisees or distributees or (in the case where a trust is created comprised of the realty) in trustees. (*Matter of Salomon,* 252 N. Y. 381, 384.) It was likewise settled law that upon the termination of a trust title to the realty held in it vested immediately in the remaindermen. (*Matter of Miller,* 257 N. Y. 349, 356.)

The omission in the last sentence of subdivision 3 of new section 285-a of the Surrogate's Court Act of the words " received, distributed or delivered " which are found in subdivision 5 of section 285 of the Act is without significance. The quoted text, as already stated, is part of subdivision 3 of the new Act which expressly limits the commissions there considered to commissions computed on " principal distributed ". The change in text was caused by the draftsman's desire to state a new formula available for the benefit of the trustee in office *at the time of distribution* and computed on *principal distributed.* He was not thinking in terms of a change of the underlying legal concepts of what constituted distribution or delivery. If he was, his text is not such as to have accomplished any change. On the contrary, the new text is precisely the same in legal meaning as the old so far as the point here under consideration is concerned. The fact still is that a trustee does not distribute a real property title which passes by operation of law. That is so whether the date of termination of the trust was on or prior to or later than August 31, 1943. The distribution was the legal consequence of the termination of the trust and not of any act of the trustee. Minimum commissions are now to be paid only if a trustee *makes distribution.* It follows that the cases dealing with trustees' commissions under subdivision 5 of section 285 of the Surrogate's Court Act form the guiding rules for administration of subdivision 3 of section 285-a of the Act so far as *ascertaining the fact of distribution* is concerned. Not only is there no legislative intent to the contrary indicated but in fact the Legislature must be deemed to have intended to follow existing law as to what constitutes distribution and delivery by a trustee and must be held to have intended no change in the applicable law.

No valid argument can be predicated of the mere fact that the quoted text relating to real property is found in subdivision 3 of the new section 285-a. The draftsmanship of the section was criticized in various respects by the Governor when he

approved the Act creating it. Its operative effect appears to vary widely from that hoped for by its proponents. The complete change in basis of compensation of trustees which the new section accomplished has been clearly developed in *Matter of Hurlbut* (180 Misc. 681) in which this branch of the court wholly concurs. The draftsman of the new legislation correctly edited the text of subdivision 5 of section 285 when he prepared the last paragraph in subdivision 3 of section 285-a. Since he was dealing with the acts of trustees only he left out the sentence in section 285 which refers to a specific legacy or devise. Since he was constructing a new statute which eliminated receiving commissions completely, he left out the word " received ". Since he had already made it clear in subdivision 3 that the new plan involved computations only on " principal distributed ", he left out the words " distributed or delivered ". Since the determination of value would have to be made judicially unless agreed upon, he left out the words " to be determined in such manner as the Surrogate may direct ". Essentially he made no change in meaning so far as the point here in issue is concerned. His editing did not alter the basic rule as to what constituted delivery or distribution. The inclusion in subdivision 3 of the new section of the sentence relating to real property may have been intended to cover those few instances in which, by reason of exercise of a power of sale, or by reason of condemnation of realty, or by reason of the special terms of a will, the trustee has basis for claiming that he distributed the realty. If such basis for claiming distribution by the trustee exists, then the rule of the statute will be applicable and the realty " shall be considered as money ". The text makes the rule applicable equally to real and *personal* property and so must be considered as operative only when the basic right to commissions on the property involved is established, that is, when *distribution* of it by the trustee is shown.

As shown in *Matter of Hurlbut* (180 Misc. 681, *supra*) the primary effect of the new statute is to eliminate receiving commissions entirely and to make the compensation of a trustee dependent ultimately upon the value of the property *distributed* by him. The concrete effect of the new plan is to eliminate as to real estate what theretofore had been the right of a trustee to have receiving commissions thereon. As the statute now stands it operates to deprive the surviving trustee of minimum commissions on realty which passes perforce the terms of the will. No other basis to realty commissions is present in this record.

The life tenant was a trustee. The question is presented whether the fact that the decree was delayed until after September 1, 1943, because of the controversies settled by prior decision of the court (*Matter of McGinnis*, N. Y. L. J. Nov. 1, 1943, p. 1170), disentitles the life tenant's estate to any commissions for his services as trustee. It was settled law before September 1, 1943, that the Surrogate in his discretion might allow to a deceased's trustee's estate a fair compensation for his services. (*Matter of Barker*, 230 N. Y. 364; *Matter of Bushe*, 227 N. Y. 85.) This discretionary power did not derive from precise text in the provisions of the Code of Civil Procedure which were operative when the cited cases arose. It is independent of both sections 285 and 285-a of the Surrogate's Court Act. Allowance to the estate of the deceased trustee will be made on the basis of a receiving commission on the whole under the Act effective at his death plus a paying-out commission under the same Act on principal assets actually disbursed while he lived.

An amended schedule of commissions should be filed in accordance with the directions herein. Thereupon the decree submitted should be corrected and it then will be signed. Proceed accordingly.