In the Matter of the Estate of Louise K. Reckford, Deceased.

Surrogate's Court, New York County, January 22, 1944.

*Charles A. Riegelman, Jay Sheldon* and *Richard R. Powell*
for Edna R. Grumbach and another, as surviving executors,
**and** others, petitioners.

*C. Alexander Capron* and *Clinton C. Swan* for City Bank Farmers Trust Company, as executor of John K. Reckford, deceased, respondent.

*John C. Hover* for Aileen T. Reckford, respondent.

*George M. Bentley* and *Muriel C. Eckes* for Yale University, respondent.

*Arthur J. O'Leary*, special guardian for John L. Baer and another, infants.

FOLEY, S. By a prior decision in this accounting proceeding, certain provisions of the will were construed. (*Matter of Reckford*, N. Y. L. J. December 15, 1943, p. 1773.) The questions of the amount of commissions to which the trustees are entitled were left open for subsequent determination. Disposition is now made. An interpretation of the terms of new section 285-a of the Surrogate's Court Act is required. Four general questions are presented:

(1) Whether a trustee is entitled to commissions for receiving the funds within the trusts which have not terminated?

(2) Whether under the terms of subdivision 3 of the new section, where part of a trust has terminated, the period less than five years for which a trustee is only entitled to one half of the so-called minimum principal commissions, is measured from the date of the qualification of the trustee to the terminating date of the trust or a part of it, or to the date of actual distribution of the fund?

(3) What compensation may be awarded to the estate of the deceased trustee?

(4) Whether under the terms of the new section a trustee is entitled to " distributing " commissions for paying over the fund to himself as trustee to be held upon further trust?

(1) During part of the period included within the transactions set forth in the account, three individual trustees functioned. One of them, John K. Reckford, died February 20, 1941. A corporate trustee was appointed in his place. Commissions for receiving principal were sought by the trustees under the provisions of section 285 of the Surrogate's Court Act, as they existed immediately prior to September 1, 1943. For the reasons stated in my decision in *Matter of Hurlbut* (180 Misc. 681) such commissions are disallowed. In their application to testamentary trustees, the terms of section 285 have been repealed. An entirely new method of computation was enacted in the new section 285-a. As to a continuing trust, the new method is based upon annual withdrawals of principal commis-

sions at the rate of 110% of annual income commissions. In *Matter of Hurlbut* (*supra*) it was determined that the intent of the Legislature was to make the new section, in its application to all trustees, prospective in its operation, beginning with September 1, 1943, the effective date of the new section. It was further determined that the terms were not retroactive so as to permit an award of principal commissions under the provisions of the prior form of section 285, nor to permit the award of principal commissions based upon income earned prior to the effective date of the statute. It was further determined that no allowance of '' receiving commissions'', as they were known under the former law, could be made.

Many attorneys, who were either themselves trustees or who represented individual trustees, have complained about the injustice of the situation created by the new section which prevented an individual trustee from obtaining a lump sum award of commissions for receiving principal by a decree made after September 1, 1943. These attorneys have pointed out that an accounting was postponed by them with the worthy motive of saving expense to the beneficiaries. By contrast, a trustee who had accounted and had been awarded commissions for receiving principal by a prior decree was in a fortunate position. The trustee who had not accounted and had not been awarded such commissions was required by the terms of the new section to wait a period of approximately from five to eight years until the annual withdrawals would equal the amount of receiving commissions.

It was stated in *Matter of Hurlbut* (*supra*) that the new section was drafted and advocated by the Trust Companies Association of the State of New York. Not all the corporate fiduciaries have approved the revolutionary changes. Many representatives of banks and trust companies have expressed their disapproval of the entire section or expressed a desire to see many of its defects corrected. They point out that unless the present high rates of commissions are drastically reduced, corporate fiduciaries will lose business by their elimination as executors and trustees by makers of wills. The terms have been severely criticized as showing that its advocates who recommended this legislation gave scant consideration to the rights of individual trustees and none to the beneficiaries of trusts. The inequities and injustices, however, cannot be corrected by the courts in an intrusion into the field of legislative jurisdiction. Whether an amendment should be made to the new section, which would permit the award of commissions for receiving

principal, is a matter solely for legislative action. Receiving commissions are, therefore, disallowed.

(2) The second question presented is whether under the terms of subdivision 3 of the new section the award of one half of minimum commissions is measured by a period from the date of the qualification of the trustee to the date of the termination of the trust or of a part of it, or to the date of the *distribution* of the fund.

Subdivision 3 provides that a testamentary " trustee who is acting *at a time of distribution* of principal shall be entitled to receive and may retain from principal as a minimum principal commission hereunder a sum by which the commissions from principal which he has theretofore at any time received is less than a sum equal to five per centum on the first two thousand dollars of principal *distributed;* two and one-half per centum on the next twenty thousand dollars thereof, and two per centum of the balance thereof. If such *distribution* is made within a period less than five years after the date of the trustee's qualification, he shall be entitled to receive a minimum principal commission at one-half of such rates." (Italics supplied.)

There may be in the minds of some persons a misunderstanding as to what is meant by " the date of the trustee's qualification " in the subdivision. Under section 167 of the Surrogate's Court Act, a trustee qualifies by filing his oath of office, his bond, when required, and a designation for the purpose of service of process. In many cases such instruments are filed even before the will is admitted to probate. Under section 88 there is provision for the issuance of letters of trusteeship. The Surrogate holds that the date of the issuance of such letters is the date of qualification intended in subdivision 3. That is, the date when the trustee is formally qualified to assume his duties.

In the pending proceeding the trust for the benefit of one of the life tenants, a son, John K. Reckford, terminated on February 20, 1941, approximately three years and five months after the qualification of the original trustees. The trust for the daughter Adelaide Reckford terminated on September 26, 1942, four years, eleven months and twenty-six days after the qualification of the trustees. The individual trustees had qualified on September 30, 1937.

The subdivision must be interpreted as it was enacted by the Legislature, and the Surrogate is compelled to hold that the five-year period must be measured from qualification to actual " distribution " and not to the date of the termination

of the trust. The duration of the trust, under the terms of the will, should have been the reasonable test of the compensation of the trustee, for it is plainly obvious that by permitting a trustee to delay distribution beyond the five-year period he or it would be entitled to full minimum commissions instead of half minimum commissions if distribution had been promptly made within the five-year period. The terms of subdivision 3, however, clearly permit a trustee to delay his accounting and distribution even if the duration of the trust may have been as short as a few years or even a few months. A direct financial incentive is thus supplied by the section to create delay. Again, the question of the correction of this injustice is a matter exclusively for legislative action.

Because over five years elapsed to the time of distribution, the Surrogate is compelled, therefore, to hold that the trustees are entitled to commissions under subdivision 3 at the full minimum rates for distributing that part of the trust for the benefit of the son, John, which, under my decision construing the will, passed as intestate property. In the case of the corporate substituted trustee, which qualified on June 20, 1941, since distribution of the intestate portion of the trust fund for the daughter, Adelaide, will be made within five years, commissions may only be allowed at one half of the percentage rates.

(3) The Surrogate holds that compensation may be awarded to the estate of the deceased trustee under the rules applied to such situations in *Matter of Barker* (230 N. Y. 364), *Matter of Bushe* (227 N. Y. 85) and *Matter of McGinnis* (181 Misc. 207). The two decisions of the Court of Appeals were rendered at a time when the prior form of section 285 of the Surrogate's Court Act was in effect. In it there was no specific mention of the amount of commissions where a fiduciary had died before the completion of his duties. The Court of Appeals held in the two cases just cited that the estate of the deceased trustee was not entitled as a matter of right to statutory commissions, but that it was within the discretion of the Surrogate to award reasonable compensation in proportion to the value of the services rendered by such trustee. Neither is there any specific mention in new section 285-a as to whether the estate of a deceased trustee is entitled to commissions or compensation. However, for the reasons stated in *Matter of Barker* (*supra*) and in *Matter of Bushe* (*supra*) it would appear that a discretionary award of compensation should be made. Compensation, therefore, is allowed to the estate of the deceased trustee, John K. Reckford, in the exercise of the discretion of the Surrogate,

at one half of the percentage rates set forth in subdivision 3. Under this formula, 2½% on the first $2,000; 1¼% on the next $20,000 and 1% of the balance may be used as the basis for the computation of compensation.

(4) Finally, the Surrogate holds that the trustees are not entitled to any commissions for turning over to themselves that part of the fund which was to be held in further trust after the death of a primary life tenant. Under the prior law it was held that in the absence of an expressed direction in a will, where a trust was to continue for a further period, commissions could not be allowed for the turning over of the fund at an intermediate event in the duration of the entire period of the trust. (*Matter of Coutts,* 260 N. Y. 128, 131, citing *Leask* v. *Beach,* 173 App. Div. 873; see, also, *Matter of Williams,* 172 Misc. 430.) The language of the will here clearly indicates continuity of holding by the trustees after the death of the primary life tenant and affords no basis for the award of additional commissions. Nor do the terms of new section 285-a in any way authorize a finding of a legislative intent to change the rule in *Matter of Coutts (supra)* and *Leask* v. *Beach (supra).* The word " distributed " in the section clearly meant a final and outright distribution to the beneficiaries and not to a trustee himself or itself. The rates of principal commissions have been greatly increased by the terms of the new section over the former rates in effect prior to September 1, 1943. In an average trust of the duration of thirty years, the new rates of such commissions are approximately three times the old rates. In trusts of longer duration the new commissions may be from approximately four to five times the commissions under the prior law.

The burdensome effect of allowing multiple commissions upon the happening of successive events is more graphically shown in dollars by selecting a typical trust, say, of $150,000. The terms of the will create a primary life estate for A, upon the death of A, a secondary life estate for B, and upon B's death, the retention of the fund by the trustees during the minority of C, an infant remainderman. The duration would be within the permissible period for the suspension of the power of alienation. Assume also that A lives six years, that B, the secondary life tenant, lives thereafter six years and that after B's death the minority of C lasted six years. Under subdivision 3 a trustee is entitled to commissions, for holding for a period of over five years, of 5% on the first $2,000, 2½% on the next $20,000, and 2% of the balance of the fund. In this theoretical trust,

the principal commissions of the single trustee at the termination of the first life would be $3,160. If there were two trustees, the principal commissions would be $6,320. If there were three trustees, the principal commissions would be $9,480. Allowing for the reduction of principal by the deduction of commissions at the end of the first life and at the end of the second life, the total commissions payable for alleged distribution on the successive events of the two deaths and the attainment of majority of the infant remainderman would be for one trustee about $9,000 and for three trustees about $27,000.

It was pointed out in *Leask* v. *Beach* (173 App. Div. 873, *supra,* at p. 876) in a similar situation: " Of course the ' paying over ' of the capital sum by the trustees to themselves was a matter of mere bookkeeping and amounted to nothing more than retaining in their own hands certain securities in which the fund had already been invested. * * * Multiple commissions are not so highly favored in the law that the terms of a will should be strained so as to permit of their payment."

Similarly, the terms of the new statute may not be strained so as to levy an excessive and burdensome charge upon the beneficiaries of a trust. The contention of the trustees here that they are entitled to multiple commissions on successive events is overruled.

In his message of approval of the new statute, Governor Dewey pointed out three major defects in the Act which required curative legislation. The actual operation of the statute in specific cases before the courts has revealed other defects and inequities not then apparent, some of which are discussed in this decision. The need for further legislative action to eliminate such injustices is a matter that may recommend itself to the Legislature. It is a field in which the law-making body alone may act. The correction of these defects cannot be accomplished by unwarranted judicial amendment.

Submit corrected computation of commissions in accordance with this decision and submit decree on notice construing the will and settling the account in accordance with both decisions of the Surrogate.