Proceed accordingly.

In the Matter of the Estate of J. Harvey Ladew, Deceased.

Surrogate's Court, New York County, November 25, 1944.

*Howard N. Deyo* for Grace National Bank of New York as trustee of Joseph H. Ladew, petitioner.

*Milbank, Tweed & Hope* for Chase National Bank of the City of New York and another, as general guardians of Patricia H. Ladew, an infant, respondents.

DELEHANTY, S. In this accounting proceeding there is presented another facet of that gem of banker-inspired legislation which was enacted despite unanimous disapproval by informed professional and judicial opinion and became chapter 694 of the Laws of 1943 creating a new section 285-a of the Surrogate's Court Act effective September 1st of that year. That enactment destroyed many long-established concepts of trust administration theretofore accepted as essential to the safety of trusts and revolutionized the basis upon which trustees were to operate. In this proceeding commissions in a trifling sum are claimed by the accounting trustee. The principle involved in passing on that claim is one applicable to every case in which property is continued in trust by reason of the exercise of a power of appointment.

An understanding of the problem requires reference to the will of deceased and to the power granted by him therein. The will created a trust for the benefit of a son and gave to the beneficiary a power to appoint the remainder. The donee of the power is now dead. He left a will which was admitted to probate in Nassau County. Thereby the donee exercised the power and directed that the principal of the trust be continued in trust for the minority of the donee's daughter.

Deceased appointed as his trustee a banking institution of this city. The donee appointed as his trustees two individuals who have qualified in this court in the donor's estate and who are prepared to receive from the trustee now accounting the remainder of the trust fund. The retiring trustee will have nothing further to do with the management and operation of the trust fund. Such management and operation now passes to the trustees named by the donee. The retiring trustee asks for the minimum principal commissions prescribed in subdivision 3 of section 285-a of the Surrogate's Court Act. That request

requires decision whether such commissions are payable under existing law.

It is established law that the appointees under a power granted by a will take their benefits directly from the donor of the power, the original testator, and not from the donee of the power. In *Matter of Harbeck* (161 N. Y. 211, 218) the court quoted from Kent's Commentaries (Vol. 4, p. 338) a statement of the Chancellor as follows: " The party who takes under the execution of a power, takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in one instrument." Speaking of appointees selected by the donee of a power the court went on to say: " The source of their title to the fund was the original will * * * and into that instrument must be read the names of the appointees, although designated by a later instrument. *For those who take under a power of appointment, take as if their names were in the grant of the power.*" (Emphasis supplied.) In *Fargo* v. *Squiers* (154 N. Y. 250, 259) the court said: " The validity of the provisions of the will * * * must * * * be tested by reading the provisions of her will into the provisions of the will * * * which created the power." In *Bishop* v. *Bishop* (257 N. Y. 40, 51) the court said: " The appointment under the power is to be read into the will by which the power was created and the validity of the gift determined as if the provision thus incorporated had been there from the beginning ".

It is established law that when a will directs the holding of a fund in trust for one life and thereafter the holding of some or all of the same fund for another life *only a single trust* is created. (*Matter of Coutts,* 260 N. Y. 128.) In the cited case trustees acting at the end of a primary life estate sought allowance of paying out commissions on the original principal and also sought receiving commissions in each of three separate trusts set up as secondary trusts out of the original fund. In that case the will directed that at the end of the first life the trustees were to divide the then principal into three parts and were " to hold and invest " such parts for respective beneficiaries. The case cites with approval *Leask* v. *Beach* (173 App. Div. 873) where the will directed that a portion of the trust property should " be paid over " to the trustees of the original trust who were to administer it in further trust. Prior to the enactment of section 285-a of the Surrogate's Court Act it was clear that in respect of the same trustee no double commissions were payable at the

termination of one trust period and the inception of another if the fund were the same in whole or in part. The concept established by *Matter of Coutts* (*supra*) and *Leask* v. *Beach* (*supra*) is that *the trust created was a single trust* and that nothing but bookkeeping was involved in the death of one life beneficiary and the inception of the rights of a successor life beneficiary.

It is established under the authorities first cited herein that the will of this deceased must be read as if it had said that the gift in trust was made to the accounting bank for the benefit of the son and, upon the latter's death, to the successor trustees for the benefit of the son's issue. The order of this court which qualified the successor trustees correctly describes them as such. By its text the successors " are granted letters of trusteeship as successor trustees to the Grace National Bank of New York, as trustee under the last Will and Testament of J. Harvey Ladew, deceased, of the fund created under said will for the benefit of Patricia Happie Ladew by virtue of the exercise of the power of appointment by the will of Joseph H. Ladew ". It seems clear from the authorities that a retiring trustee who had not finished the administration of a trust was not entitled to paying-out commissions under the law prior to September 1, 1943, though a newly acting trustee might be entitled to receiving commissions. Even if, for the sake of the discussion only, it were to be assumed that the retiring trustee who now accounts would under the former act have been entitled to paying-out commissions the trust involved remains a single one and the question remains whether or not the trustee here accounting is entitled to receive commissions under existing law.

The case which in the first instance discussed the revolutionary changes made by chapter 694 of the Laws of 1943 is *Matter of Hurlbut* (180 Misc. 681). As the discussion in that case showed, the new legislation in respect of the commissions of trustees had made inapplicable most of the well-settled law on the subject. The court which wrote the *Hurlbut* decision had occasion in *Matter of Edwards* (183 Misc. 1014, 1017) to develop this thesis. In the *Edwards* case the court was dealing with a claim for commissions on disbursements made prior to the final termination of a trust and was discussing subdivision 3 of section 285-a of the Surrogate's Court Act in that regard. Among other things it said: " The purpose, intent and scope of subdivision 3 of the statute is perfectly clear. We are left in no state of doubt as to the nature of this commission. It is not ' a paying commission.' It is expressly characterized ' as a *minimum* principal commission.' Having in mind the

background of the former statute and the different method of computing and awarding principal commissions under the new section, the meaning of these words cannot be mistaken. It was intended by the Legislature to be the lowest amount of principal commissions which the trustee was to be entitled for the *complete* administration of the *entire capital* of the trust." (Emphasis in original.)

Again in the *Edwards* case the court said: "The statute clearly states by reasonable inference that the minimum principal commission is payable only to a trustee who is acting at a time of ' final distribution ' of principal. The requisites of final distribution and completed administration of the trust are so implicit in every part of this subdivision that they cannot be ignored. * * * Moreover the concluding sentence of the first paragraph of subdivision 3 further clarifies the interpretation that no part of the minimum commission is to be paid until the final termination of the entire trust. It provides that in applying the rates of the minimum commission ' consideration shall be given to the total amount of any previous distributions of principal.' On the theory that the minimum is to be computed only upon the final and complete distribution of the trust assets, this sentence has a necessary and understandable place in the plan. Under any other interpretation of the statute, this sentence would be unnecessary and illogical."

This court is wholly in agreement with the statements quoted from the *Edwards* decision (*supra*). While that case dealt with a different aspect of the commissions question than the one here present, the principle involved is the same and the rule of law there stated is here applicable. That principle is: there is *only one time of distribution* under section 285-a of the Surrogate's Court Act. The question is of course one of statutory construction. The issue concerns itself with the meaning of the phrase, " acting at a time of distribution of principal ". Throughout subdivision 3 of the section under consideration the word " distribution " is used in the same sense. That word in estate law had a fixed and definite meaning prior to the new enactment, to wit, the beneficial vesting of property passing in intestacy or under a will so that those who receive it take it as their own. As the Restatement in Conflict of Laws says (§ 303, comment b): " The process of realizing the movable assets of an estate and paying out of them debts and other claims against the estate is administration. The division of what remains is distribution." In *Thompson* v. *Tracey* (60 N. Y. 174, 180) the term is thus defined: " In general, the term ' distribu-

tion,' when applied to the estate of a deceased person, refers to the ultimate division of the estate among the next of kin, in case of intestacy, or among the beneficiaries under a will, after the estate is free from debt." This definition was essential to the decision in the cited case because of the nature of the issue there decided. The opinion quotes to the same purport definitions appearing in the then extant edition of Bouvier's Law Dictionary, in Kent's Commentaries, in Jacob's Law Dictionary and in the Revised Statutes. The dictionaries also define the word " distribution ". In the Century Dictionary the first definition is this: " The act of dividing or parcelling out; allotment in shares of according to requirement; apportionment; division among several: as, the *distribution* of an estate among the heirs; * * *." And in Merriam-Webster's New International Dictionary [2d ed.], the first meaning is: " Act of distributing; apportionment among several or many; as, *distribution* of gifts." And this dictionary gives the special meaning for estates thus: " Law. The apportionment, by a court, of the personal property of an intestate or its proceeds among those entitled to it according to the statutes of distribution ". Our Decedent Estate Law in article 3 deals with descent and distribution and employs the word under consideration in the same sense as the dictionaries give to it. It was against this background of dictionary and statutory meaning of the term " distribution " that chapter 694 of the Laws of 1943 was passed by the Legislature. The term " distribution " as used by the Legislature can have no meaning other than the one given in *Matter of Edwards* (183 Misc. 1014, *supra*) and adopted in this decision. Giving that meaning to the word, it is clear that the retiring trustee is not a trustee " acting at a time of distribution of principal ". Therefore it cannot receive principal commissions under subdivision 3 of section 285-a of the Surrogate's Court Act. The trustee has asked for commissions only under the cited subdivision. Its request must be denied for lack of power to grant it.

However it is to be remembered that the Surrogates' Association undertook in 1944 to remedy in part the injuries inflicted chiefly on individual trustees by the banker-inspired legislation of 1943. By chapter 138 of the Laws of 1944, sponsored by the Surrogates' Association, provision was made for the benefit of any trustee who had not been awarded receiving commissions on principal by decree made prior to September 1, 1943. Within a limited period the court was authorized by this new enactment to allow commissions equal to those which might have been

awarded for receiving principal under the old act. It would seem from the account now on file that the accounting trustee comes within the terms of chapter 138 of the Laws of 1944. If it shall ask for allowance of commissions under the amendment to section 285-a which chapter 138 of the Laws of 1944 accomplished the court will give consideration to such request. If the request is made it should take the form of a recomputation of commissions in accordance with the provisions of subdivision 2 of section 285-a of the Surrogate's Court Act. The proposed decree heretofore submitted must in any case be amended so as to eliminate the provision for commissions on principal now contained therein. The court should be advised promptly by the trustee what course it intends to pursue in respect of its commissions so that the decree may be entered.

Proceed accordingly.