In the Matter of the Accounting of EVELYN W. MILLER et al., as Successor Trustees, and JOHN DE BRAGANA, as Executor of WILLIAM R. STEWART, JR., Deceased Trustee, under the Will of LISPENARD STEWART, Deceased.

Surrogate's Court, New York County, November 14, 1946.

*Bleakley, Platt & Walker* for Evelyn W. Miller and another, as successor trustees, petitioners.

*Jerome J. Lande,* special guardian for Serena R. Stewart, infant remainderman, respondent.

DELEHANTY, S. The accounting trustees request payment of a minimum principal commission under subdivision 3 of section 285-a of the Surrogate's Court Act. The court holds that they are not entitled to a minimum principal commission since petitioners are not yet acting at a time of *final* distribution of principal (*Matter of Edwards,* 183 Misc. 1014; *Matter of Moyse,* 188 Misc. 1030; *Matter of Zinn,* 188 Misc. 675).

In the fifth paragraph of his will deceased created two separate trusts, one for the benefit of his brother and the other for his sister. We are here concerned only with the brother's trust. Deceased directed that upon his brother's death the fund be

divided in two equal parts and continued in trust, one half for the benefit of a nephew and the other half for the benefit of a niece. Upon the death of a secondary life beneficiary the principal of the share held for his or her use was to be paid to the issue of such beneficiary. The brother of deceased died in 1929 and the nephew in 1945. The niece is still living. The trustees are about to distribute one half of the trust fund to the issue of the nephew. No distribution is presently being made of the other half of the trust fund. It is still being held for the benefit of the niece.

The trustees have accounted only for the portion of the fund which is now being distributed. The schedules of the account show that the assets of the entire trust fund have been held in solido and that there have been allocated to the nephew's benefit one fourth of all of the charges and credits against the combined fund. Except by inference the account does not report any transactions relating to that part of the trust fund which is held for the benefit of the niece. No objection is made to the form of the account and in the absence of such objection by an interested party the court is not required to pass upon the propriety of such practice.

Section 285-a of the Surrogate's Court Act became effective on September 1, 1943 (L. 1943, ch. 694). The character and nature of the changes effected by this statute have been the subject of careful consideration by the late Surrogate FOLEY on several occasions (*Matter of Hurlbut*, 180 Misc. 681; *Matter of Reckford*, 181 Misc. 211; *Matter of Edwards*, 183 Misc. 1014, *supra*). Prior to the enactment of this statute principal commissions of trustees were measured by the value of the capital of the trust at the time of its receipt and at the time of its distribution. " One half of the total was allowed for receiving commissions by the decree on the first or subsequent intermediate accounting of the trustees. The remaining one half, representing the paying-out commissions, was allowed by the decree in an accounting proceeding after a partial distribution of principal or upon the final distribution after the termination of the trust. *This method has now been abolished.* The new plan authorizes the withdrawal by a trustee out of principal of 110% of the amount of income commissions in each year." (*Matter of Hurlbut, supra,* p. 683.) (Emphasis supplied.)

In *Matter of Edwards* (*supra*) Surrogate FOLEY analyzed the new system of computing and paying principal commission and stated at some length the purpose and effect of the statute. The

reasoning of the decision is particularly apposite here. The Surrogate said (pp. 1016–1017):

" The enactment of section 285-a of the Surrogate's Court Act (L. 1943, ch. 694) introduced a revolutionary change in the method of computing and paying principal commissions of trustees. (*Matter of Hurlbut,* 180 Misc. 681.) Instead of basing principal commissions on the value of the principal assets received and paid out, the new statute based the computation and withdrawal or award of principal commissions upon the amount of income collected annually by the trustee.

" If these were the only provisions in the statute for the withdrawal of principal commissions, it is apparent that in a trust of short duration, the trustee would receive a much smaller compensation than he would have received under the former section 285 because his annual commissions must end when the trust terminates. His total principal commission might, therefore, aggregate no more than a few annual commissions. Hence, the sponsors of the new legislation — the Trust Companies Association of the State of New York — advocated a provision which would guarantee them an absolute minimum principal commission in a substantial amount. That provision is contained in subdivision 3 of section 285-a  *  *  *  . The purpose, intent and scope of subdivision 3 of the statute are perfectly clear. We are left in no state of doubt as to the nature of this commission. It is not a ' paying commission '. It is expressly characterized ' as a *minimum* principal commission '. (Italics supplied.) Having in mind the background of the former statute and the different method of computing and awarding principal commissions under the new section, the meaning of these words cannot be mistaken. It was intended by the Legislature to be the lowest amount of principal commissions to which the trustee was to be entitled for the *complete* administration of the *entire capital* of the trust. Moreover, the minimum commission is determined by the difference between the amount calculated at the specified rates and the total commissions from principal that the trustee ' has theretofore *at any time* received '. (Italics mine.) In other words, the minimum is only the least amount which he may expect and once he has passed that amount in the withdrawal of his commissions, he ceases to have any further right in the minimum principal commission.

" The statute clearly states by reasonable inference that the minimum principal commission is payable only to a trustee who is acting at a time of ' final distribution ' of principal. The requisites of final distribution and completed administration

of the trust are so implicit in every part of this subdivision that they cannot be ignored.

" In the first place the very concept of a ' minimum commission ' indicates that it is not subject to fixation until the complete administration of the trust. If that were not so, a trustee might obtain a payment on account of his minimum commission on a partial distribution and yet continue to administer the fund with annual withdrawals of commissions far in excess of the minimum. He would thus receive an extra award of a minimum and regular additional awards in excess of the minimum."

That decision has been followed by this branch of the court (*Matter of Ladew*, 183 Misc. 1020; *Matter of Zinn*, 188 Misc. 675, *supra*) and has been consistently applied in this court (*Matter of Fareira*, N. Y. L. J., Aug. 17, 1944, p. 306, col. 3, FOLEY, S.; *Matter of Rodriguez*, N. Y. L. J., Aug. 17, 1944, p. 306, col. 2, FOLEY, S.; *Matter of Sidenberg*, N. Y. L. J., March 3, 1944, p. 848, col. 6, FOLEY, S.; *Matter of Simonton*, N. Y. L. J., Aug. 17, 1944, p. 306, col. 2, FOLEY, S.; *Matter of Moyse*, 188 Misc. 1030, *supra*, COLLINS, S.).

Under the old statute, the commissions for " receiving " and " paying out " provided a total compensation for the entire body of services rendered by the trustee from the establishment of the trust until its final termination (L. HAND, J., in *Civiletti v. Commissioner of Internal Revenue*, 152 F. 2d 332; *Matter of Ellmers*, 180 Misc. 835, 837). Section 285-a swept away so completely this method of measuring and allowing compensation that the court was no longer authorized to allow a receiving or paying commission even to trustees who had been administering trusts for many years in the expectation of receiving lump sum compensation (*Matter of Sidenberg*, N. Y. L. J., March 3, 1944, p. 848, col. 6, *supra*.). This situation was remedied by chapter 138 of the Laws of 1944 to the extent only that the court might award a lump sum receiving commission to the trustee of a trust established before September 1, 1943 (§ 285-a, subd. 2; see explanatory note to L. 1944, ch. 138). No authority was given to the court, however, to allow any paying commission to any trustee regardless of when the trust was established. Henceforth a trustee was to be compensated only on the basis of income collected by him, with the additional assurance that he would have a definite minimum amount *for the full and complete administration of the entire trust*. During the trust term he will be paid currently his annual principal commission. Not until the trust term ends, not until all payments of annual commissions have been reckoned, can it be determined whether the

trustee has passed his minimum compensation or whether some part of the minimum is still due him.

Under well-settled authority it is clear that the trust created for the primary life use of the brother has not yet terminated (*Matter of Coutts,* 260 N. Y. 128, 131; *Leask* v. *Beach,* 173 App. Div. 873; *Matter of Reckford,* 181 Misc. 211, 217, *supra; Matter of Deutsch,* N. Y. L. J., June 3, 1944, p. 2142, col. 2, FOLEY, S.; *Matter of Sidenberg,* N. Y. L. J., March 3, 1944, p. 848, col. 6, *supra,* FOLEY, S.). The will of deceased created a separate trust for the life of his brother. Upon the brother's death the will directs that " said fund shall be divided into two equal parts, and one of said parts shall be held by my Trustees for the life of said William Rhinelander Stewart Jr., * * * and I direct that the other one-half of said fund shall be held by my Trustees in trust for the life of my niece, Anita Stewart * * * ." In *Matter of Coutts* (*supra,* p. 131) the Court of Appeals, refusing to allow commissions to trustees who were attempting under similar circumstances to divide a single trust into multiple trusts, said: " It should be noted that the will directs the executors ' to divide the principal of the trust fund into three equal parts and one of said parts to hold and invest,' etc. There is no specific direction that they are to pay to themselves as trustees the parts. The intent indicated by the language is that they are to continue to hold the original fund, but divided into parts." In *Matter of Reckford* (181 Misc. 211, 217, *supra*) Surrogate FOLEY pointed out that the terms of section 285-a did not warrant a finding of legislative intent to change the rule laid down in *Matter of Coutts.*

For the purpose of validating under the Statute of Perpetuities secondary trusts for separate life uses, the courts often speak of them as separate secondary trusts. In such cases the court is merely applying the rule that the validity of each separate limitation is to be determined separately under the Rule against Perpetuities (Restatement, Property, § 376, comment d). The court does no more than declare that in respect of separable portions of the entire fund the power of alienation is not suspended beyond the permissible period (*Matter of Zinn* 188 Misc. 675). " This is not tantamount to saying that the shares must be regarded as separate trusts for all purposes. In other phases of litigation the division of a fund originally held in trust is not regarded as creating any new trust but as merely continuing the property in a single trust until ultimately disposed of, though such disposition be in fractions and seriatim * * * ." (*Matter of Zinn, supra,* pp. 678, 679.)

The trustees must continue to hold part of the fund for the benefit of the niece and they will be entitled to retain annual principal commissions in accordance with the terms of the statute. Upon the termination of the entire trust the time will have arrived for computation of the minimum commission. In applying the rates specified in the statute " * * * consideration shall be given to the total amount of any previous distributions of principal." (Surrogate's Ct. Act, § 285-a, subd. 3.) There must be deducted from the commission so computed " the commissions from principal which he has theretofore at any time received ". *As the withdrawal of annual commissions continues, the unpaid minimum will correspondingly decrease and may in time be exhausted so that no one can say until the process ceases what the final result will be.* The fixation of the minimum commission must of its very nature await the complete administration of the entire trust, or as Surrogate FOLEY pointed out, we should have the anomalous situation of a payment on account of the minimum on a partial distribution and yet the continued withdrawal of annual commissions far in excess of the minimum (*Matter of Edwards, supra, p.* 1018).

The decisions in *Matter of Jackson* (187 Misc. 156, VANDERMEULEN, S.) and *Matter of Boettger* (184 Misc. 103, HENDERSON, S.) are cited in support of the trustees' right to immediate payment of commissions. These decisions while not expressly repudiating the authority of *Matter of Edwards* (*supra*) nevertheless ignore the reasoning of the opinion and base the award of commissions not upon the statute but upon the supposed equitable consideration that otherwise the last remainderman might bear the full burden of the minimum commission. Equity no doubt requires that the burden of the charge be fairly distributed but no equitable principle requires that the impact of the charges be made uniform by awarding to the trustees an additional commission which the statute does not give them. Absolute equity as between the respective remaindermen can be maintained by a direction in the decree that out of the share now being distributed there shall be retained by the trustees a sum on account of the minimum principal commission that would be chargeable against such share if the entire trust had now terminated. Such amount may be retained by the trustees pending the final termination of the trust, at which time the court will fix the minimum principal commission if any be due and will apportion the charge against the respective interests (*Matter of Zinn, supra*).

The decree which has been submitted must be corrected in accordance with the decision of the court. The allowance has been fixed and the decree may be completed by the insertion of the appropriate figures and resubmitted for signature.