John M. Keane, S.
It is not likely that the cunning conveyancer in the 15th century or earlier, who first conceived the idea of a “ feoffment to such uses as the feoffor should appoint by will”, envisioned some of the collateral offspring of the concept which we characterize today as a power of appointment. At its inception, the dominant purpose was to circumvent restrictive laws relating to real property. (See 5 American Law of Property — Part 23, pp. 459-479.)
Interestingly enough, its most publicized use today retains the basic concept of circumvention — only this time the villain is most frequently the Internal Revenue Service. Despite its origin in sophistry, a power of appointment does make possible *1004 certain practical dispositions of property when there is no idea of circumvention.
The facts on this settlement of the trustee’s account are not in dispute. Chester W. Stephens died April 12, 1950. He created a trust in his will for the benefit of Elizabeth C. Watters during her lifetime. He gave her a testamentary general power of appointment over the corpus.
Elizabeth C. Watters died November 20, 1964. In a will executed December 28,1956, Elizabeth C. Watters appointed the corpus on a further trust with the same corpus trustee for two additional lives. Intervention by an enlightened Legislature corrected this illegal suspension of the power of alienation by the enactment of chapters 152 and 153 of the Laws of 1958 (Personal Property Law, § 11; Real Property Law, § 42).
The present controversy concerns the amount of commissions payable to the corporate trustee upon this judicial settlement of the accounts following the death of Elizabeth C. Watters, the primary life beneficiary. The trustee contends that the trust created in the will of Chester W. Stephens for the benefit of Elizabeth C. Watters has now terminated and it is entitled to full commissions pursuant to section 285-a of the Surrogate’s Court Act.
It is also the contention of the trustee that the appointment by Elizabeth C. Watters of the corpus upon further trusts in the exercise of her testamentary general power of appointment creates new trusts upon which full commissions will eventually be payable.
The trustee concedes that if the secondary trusts were part of the original instrument, full commissions would not be payable at this time. (Matter of Coutts, 260 N. Y. 128 [1932]; Matter of Edwards, 183 Misc. 1014 [1944]; Matter of Ladew, 183 Misc. 1020 [1944] and Matter of Faroll, 39 Misc 2d 309 [1963].) The trustee points out that there are significant variations between the trust created by the will of Chester W. Stephens and the further trusts created by the will of Elizabeth C. Watters in exercising her general power of appointment as an additional basis for justifying full commissions now.
To support its contention that it is entitled to full commissions, the trustee relies primarily on Matter of Culver (294 N. Y. 321 [1945]) and Matter of Moulton (1 A D 2d 771 [1956]).
This same question involving commissions was recently before this court. In Matter of Molyneaux (44 Misc 2d 159 [1964]) on similar facts, full commissions were not allowed by this court. The cases therein cited and the reasoning will not be repeated here. In effect, counsel for the trustee is requesting *1005 a reargument of the applicable law relating to the result reached by this court in Matter of Molyneux (supra). That request is granted.
Certainly the question of the payment of commissions is collateral to the concept of a power of appointment. Yet to reach a sound conclusion, the historical origin of powers of appointment should be examined.
Based upon reasoning which we often find difficult to comprehend today, many restrictions surrounded the disposition of of real property upon death in England in the 15th century. Equally difficult to understand are some of the methods devised to circumvent and evade the restrictions. For example, although certain interests in land could not be devised, a use created upon such land could be devised. The result, of course, was a devious method of providing for the devise of real property.
Among other reasons, the Statute of Uses was enacted in 1536 to establish some order in the complex nature of land titles. Shortly thereafter, in 1540, the Statute of Wills was enacted. Although powers of appointment continued to exist in England, their use was not too prevalent in this country because of the lack of restrictions on the transfer of interests in real property. (See 3 Powell, Real Property, par. 385.)
By its very nature, the power of appointment involves a grant of authority to another person to effect dispositions. For this reason the concept originally was closely analogous to agency and to the power of an attorney in fact. Historically, it is easy to see how the concept developed that the donee of the power was merely ‘ ‘ filling in a blank ’ ’ in the will of the donor of the power. This idea has been termed a “ relation back,” a designation which is not one of the more felicitous in the law. By analysis, the original grant is made by the donor. The donee is the instrument to effect the final disposition.
Like many complicated ideas, this one became more complex with the passage of time. Originally a power of appointment was more in the nature of what we call today a special power of appointment. However, as the use of the concept grew, there came to be created general powers of appointment presently exercisable and general powers of appointment exercisable by will. These were in addition to the special power of appointment, whether exercisable presently or by will.
In the case of the general power of appointment presently exercisable, writers have pointed out that the donee has complete ownership. Therefore, they say, the rules of complete ownership should prevail. In numerous instances, this idea is followed, particularly with reference to rights of creditors and *1006 the taxing authorities. In this situation, the writers say, it is unsound to <f relate back ” to the donor’s instrument because the donee has all the powers of existing ownership. With the logic of these writers, this court cannot quarrel.
The general power of appointment given by the will of Chester W. Stephens was exercisable only by the will of Elizabeth C. Watters. While this gave her complete disposition of the corpus, she did not have the right to appoint the property to herself in her lifetime. Argument is made that since most estate tax laws today impose a levy on a general power of appointment, all the other attributes of ownership should apply. However, this court believes that estate taxes are levied on the right of disposition, a somewhat lesser right than the right of ownership. Therefore, the right involved here is not a general power of appointment presently exercisable. Since the power held by Elizabeth C. Watters did not constitute full ownership, this court does not agree with the trustee that the further trusts are really trusts created by a new owner.
Beginning around 1900, the power of appointment began to be used in an effort to limit the impact of inheritance and estate taxes. (See 3 Powell, supra, par. 392.) In 1919, the Federal estate tax was first levied on a general power of appointment if exercised. The imposition of the tax went through various changes, principally in 1942 and 1951. Interpretation of instruments containing powers of appointment will occur with increasing frequency in view of the provisions of the Revenue Act of 1948 creating the marital deduction, and the tax advantages permitted by the Powers of Appointment Act of 1951 (U. S. Code, tit. 26, §§ 2041, 2514).
The ultimate disposition of the property is not the act of the donor alone when property passes pursuant to the exercise of a power of appointment. Some affirmative act on the part of the donee is required. Yet the source of the power lies in the instrument of the donor. Despite some contrary observations (See 1 Simes, Law of Future Interests, § 253), this court believes that a rational explanation here requires that the disposing document of the donee be read into the creating, document of the donor. Once this assumption is made, the appointment upon a further trust creates the same situation that exists when two or more successive trusts are created in the original document.
The trustee objects that such an interpretation is unfair in denying it full commissions. The trustee, in effect, says that if it resigned on the death of Elizabeth C. Watters, the primary life beneficiary, a successor trustee would be entitled to full *1007 commissions on the property received. The trustee is not required to continue as fiduciary. It is true that this is not the complete answer because the trustee does have some obligation to the person who selected it.
Matter of Culver (294 N. Y. 321, supra) and Matter of Moulton (1 A D 2d 771, supra) have been reviewed again. So also has Matter of Moyse (188 Misc. 1030 [1945]). This court still believes that Matter of Culver (supra) should be limited to the facts existing in that case.
Until a statute clarifies the question concerning commissions in a situation as is now before this court or until a higher court determines otherwise, this court will treat a further trust created by the exercise of a power of appointment as a part of the donor’s will to the end that only one set of commissions will be allowed in the same manner as if the donor himself had created the two or more trusts.
This court, therefore, determines that the power of appointment has been validly exercised. It also determines that the trustee is entitled at this time only to receiving commissions and paying commissions for principal actually paid out pursuant to section 285-a of the Surrogate’s Court Act. Submit decree in accord with decision.