Otto C. Jaeger, S.
A testamentary trustee has petitioned for the final judicial settlement of its account. The trust was created for the life benefit of testator’s widow to whom he gave a general testamentary power of appointment over principal. The widow has now died and her will has been admitted to probate in this court. The widow expressly referred to the power of appointment in article fourth of her will where she devised and bequeathed “ all the rest of my property, including the property over which I have a power of appointment under the Will of my husband, john s. snelham (hereinafter known as my ‘ residuary estate ’) to my Trustee ”. The trust is created for the lives of her sisters and the named trustee is the same as the trustee now accounting in the donor’s estate. No question is involved as to the validity of the exercise of the power. The only questions are:
1. Is the trustee named by the donee entitled to the appointive fund without qualifying and receiving letters of trusteeship in the estate of the donor?
2. Is the accounting trustee entitled to commissions for paying over the assets in its hands to itself as trustee under the will of the donee?
As to the first question, there is authority for requiring the trustee to qualify and obtain its letters of trusteeship in the donor’s estate (Matter of Bradford, 165 Misc. 736, affd. without opn. 254 App. Div. 828 [1st Dept.]; Matter of Moyse, 188 Misc. 1030, 1033; Matter of Walbridge, 178 Misc. 32; Matter of Eginton, 21 Misc 2d 179). However, the donee’s obvious intent, as *861 well as ample practical reasons, favors the trustee’s qualifying and obtaining such letters in the donee’s estate.
The authority requiring issuance of letters in the donor’s estate has for its basis the traditional doctrine of ‘ ‘ relation back ”. That doctrine is founded on a strict, theoretical analysis of the grant of a power, the exercise thereof and the estates created thereunder (for a discussion of its historical origins, see Matter of Stephens, 49 Misc 2d 1003). Simply stated, the doctrine holds that the appointive property originates in the estate of the donor and upon the exercise of the power by the donee, the property passes directly from the donor’s estate to the appointee. The act of the donee is deemed to be the act of the donor, as if the donor himself had disposed of the property in the manner chosen by the donee.
If as a result of the doctrine, the trustee here is forced to qualify and receive its letters in the donor’s estate in order to administer the appointive fund, awkward administrative features will follow. The trustee would be required to maintain two separate trust accounts (one for the appointive fund and another for the donee’s own property) with the extra administrative details incident thereto. The trustee would be required to account in two separate estates, causing additional expense including possibly increased annual commissions. Income tax complications could also ensue. These features would become even more unpalatable if one assumes a situation where the donee’s estate is administered in a different county or worse yet a different State from that where the donor’s is being administered. It is unreasonable to attribute to any donor or donee an intent to spawn such an impractical and uneconomical operation.
It is significant that over the years some erosion of the doctrine has taken place. The most common instances are the so-called merger cases — situations where the donee appoints the fund directly to his executors, causing the fund to merge with his own assets and completely lose its identity with its original source, i.e. the donor’s estate (Matter of Wainwright, 248 App. Div. 336, 342). The accounting trustee recognizes that no merger with the donee’s general estate has taken place here and the court agrees.
Another instance of erosion appears in the field of taxation. The doctrine was raised as a technical objection to the imposition of a transfer tax in the donee’s estate, the tax having been levied pursuant to a tax statute which did not exist at the time of the donor’s death. This clearly raised constitutional ques *862 tions stemming from the “ relation back ” doctrine. In disregarding the doctrine, the courts, including the Supreme Court of the United States, emphasized that the transfer was an act of the donee of the power, under his own will, with the property and title thereto passing by his own act, not the donor’s (Matter of Dows, 167 N. Y. 227, affd. 183 U. S. 278; Chanler v. Kelsey, 205 U. S. 466).
Commission cases furnish still another instance of erosion (see Matter of Culver, 294 N. Y. 321; Matter of Moulton, 1 AD 2d 771; Matter of Davis, 26 A D 2d 782). In these cases the courts have looked to the intent of the donee and his own testamentary scheme. The attempt of the donee to treat the fund as if it were his own and to subject it to a new trust which he hjmself created was clear. Accordingly, the courts strove to effectuate his intent insofar as possible. As a result, they upheld the right of a trustee common to both trusts to receive a double set of commissions on a finding that ‘ ‘ there are two settlors, two instruments of trust, two actually different trusts and two sets of trustees ” (Matter of Culver, supra, p. 325).
Viewing the facts in the present case, there is no doubt in the court’s mind as to the donee’s intent. She gave “ all the rest of my property, including the property over which I have a power of appointment * * * (hereinafter known as my 1 residuary estate ’) to my trustee ”. There is an obvious inaccuracy here because the appointive fund was not and never could be her property. At the most she could have made it part of her estate by appointing it to her executors. But concededly she did not do this. What she did was to appoint two funds to her trustees: — one was the rest of her property and the other was the appointive property. The former passes from her executor to her trustees; the latter from the donor’s trustee directly to the donee’s trustee without going through the donee’s estate. The effect of the donee’s disposition is that the two funds, once they reach the hands of the donee’s trustee, will become merged into a single fund. In short, under her testamentary plan the two funds are to be paid to her trustee named in her will and together are to constitute the corpus of the trust created by her. The court sees no reason why this plan cannot be effectuated.
Accordingly, the court determines that the trustee named by the donee, upon qualifying and receiving letters of trusteeship in the donee’s estate, will be entitled to the appointive fund without qualifying and receiving letters of trusteeship in the donor’s estate.
*863 The answer to the second question posed by the accounting trustee must now appear obvious. The facts here fall within the dictates of Matter of Culver (294 N., Y. 321, supra), Matter of Moulton (1 A D 2d 771, supra) and Matter of Davis (26 A D 2d 782, supra), and the court will allow paying commissions to the accounting trustee upon the turnover of the appointive fund to itself as trustee under the donee’s will.
The request for approval of attorneys’ fees in the sum of $3,500 will be passed upon at the time of decree when the court will also consider the attorneys’ request for additional fees for their additional services. A further affidavit pertaining to the additional services shall be submitted at the time the account is brought down to date.