In the Matter of the Accounting of FREDERICK W.
BARKER et al., as Executors of and Trustees under
the Will of JAMES J. BELDEN, Deceased, Respondents.

HELEN C. BENSON, as Executrix of CADWELL B. BENSON,
Deceased, et al., Appellants; TITLE GUARANTEE
AND TRUST COMPANY, as Guardian of BELDEN
WIGGLESWORTH et al., Respondents.

Executors and trustees — Surrogate's Court — commissions
of executors who died before the completion of their duties —
jurisdiction of surrogate to allow in his discretion commissions
based upon the real estate and personal property which came
into the custody of the deceased executors — will — provision
for division of share of legatee dying before end of trust period
— when share of such legatee to be divided under the Statute
of Descent as in case of intestacy — when such provision not
affected by provision authorizing trustees to convert the real
estate into personalty.

1. Where executors and trustees under a will died before the com-
pletion of their duties their estates did not become entitled as a matter
of right to statutory commissions; but the surrogate, having juris-
diction, may, in his discretion, make what he regards as a proper
allowance, not exceeding the statutory rate, for their services in
receiving the property, and in doing this he may take into account the
value of the real estate which was in their charge.

2. Until the amendment to section 2753 of the Code of Civil Pro-
cedure in 1916, which provided that " the value of any real or personal
property and the increment thereof * * * shall be considered as
money in making computation of commissions," an executor could not
have been allowed fees for merely receiving real estate. But it is the
general rule that the fees of an executor are to be fixed by the rules of
law which prevail at the time they are settled, and, hence, although
executors of a will died before the enactment of this amendment, the
surrogate may, upon the subsequent settlement of their accounts,
take into account the value of the real estate which came under the
custody and charge of the deceased executors, in determining as a
matter of discretion the fees which should be allowed to them.

3. In its technical and strictly correct sense the word " heirs "
is one of limitation and representation, denoting descent, and is not

one of purchase, and it is presumed to have been used by a testator in its correct sense.   Although this meaning yields to the intent of the testator, and if there be evidence in the will of his purpose to use it as a word merely descriptive of a class who are to partake of his bounty, such intent and meaning will prevail, yet where, in the testamentary provisions, there is no evidence of an intent to use the word " heirs " otherwise than with precision in its ordinary and orthodox meaning, and such testamentary provisions seek to create the very result which would have arisen if the property devised and bequeathed had vested in the deceased beneficiary and he had then died intestate so that his " heirs " would take in his place, and the feature of heirship is emphasized by reference to the statute governing the descent of real estate in case of intestacy, the relatives of such deceased legatee take *per stirpes* in accordance with the Statute of Descent and not *per capita* by purchase or in accordance with the Statute of Distribution.

4. Where a testator, who left a large estate, the bulk of which consisted of real estate, created a trust for a term of years, authorizing his executors and trustees to sell the real estate at their discretion, there was a technical conversion of the real estate; but where the provisions of the will which divided the estate at the end of the trust period and bequeathed and devised certain parts of the estate to designated beneficiaries and, in case of the death of any of them before a fixed time, directed that the share of the one so dying should go to his lawful heirs and further declared that " the term ' lawful ' heirs, as used in this will shall be deemed to be the persons to whom the real estate would descend in cases of intestacy under the laws of the State of New York in force at that time," such share is not to be divided and pass under the Statute of Distribution even though part of the real estate had been sold and converted into personalty, when it appears that it was the intent of the testator gathered from the terms of the will and from expressions used by him, with, apparently, clear knowledge of their meaning and effect, that the residuary estate of any deceased legatee should be divided under the rules applicable to the descent of real estate rather than under those applicable to personal estate.

*Matter of Barker*, 186 App. Div. 317, modified.

(Argued January 18, 1921; decided March 1, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 14, 1919, which modified and affirmed as modified a decree of the Onondaga County

Surrogate's Court settling the accounts of surviving executors and trustees under the will of James J. Belden, deceased, and remitted the matter to said surrogate.

The following questions were certified: "1. Is the executor of the will of Cadwell B. Benson entitled, as matter of right, to receive one-half of the statutory commissions upon the value of the Manhattan Hotel property, as compensation for the services of said Cadwell B. Benson, as one of the executors and trustees of and under the will of James J. Belden, deceased, rendered by said executor and trustee during his lifetime, for receiving said property and administering the same, until the time of his death? 2. Are the executors of the will of Theodore A. Page entitled, as matter of right, to receive one-half of the statutory commissions upon the value of the Manhattan Hotel property, as compensation for the services of said Theodore A. Page, as one of the executors and trustees of and under the will of James J. Belden, deceased, rendered by said executor and trustee during his lifetime for receiving said property and administering the same, until the time of his death? 3. Are Anna G. Belden and other legatees similarily situated entitled to receive interest at the rate of six per cent upon their legacies, from the date of the termination of the trust period as fixed by the will? 4. Are the lawful heirs of Edward M. Belden, deceased, entitled to share *per capita* the legacy bequeathed to said Edward M. Belden, deceased."

*D. P. Morehouse* for Helen C. Benson, as executrix of Cadwell B. Benson, deceased, et al., appellants. Equitable conversion of the real estate into personalty having been effected by the will, the executors were entitled to the same commissions as if the estate was personalty. (*Lawrence* v. *Littlefield*, 215 N. Y. 583; *Moncrief* v. *Ross*, 50 N. Y. 431; *Delafield* v. *Barlow*, 107 N. Y. 535; *Graham* v. *Livingston*, 7 Hun, 11; *Stagg* v. *Jackson*, 1 N. Y. 206; *Hood* v. *Hood*, 85 N. Y. 561; *Finley* v. *Bent*, 95 N. Y. 364.)

The statute in force at the time of the accounting governs the allowance of compensation or commissions, and under that statute the estate of Cadwell B. Benson was entitled to the commissions allowed by section 2753 as amended in 1916, and in force at the time of this accounting, and which were the commissions allowed by the Surrogate's Court. (*Robertson* v. *de Brulatour*, 188 N. Y. 301.) The provisions of section 2753 of the Code, as amended in 1916, and in force at the time of this accounting, applied to the facts in this case, clearly entitled Mr. Benson's estate to the commissions allowed him by the surrogate's decree. (*Matter of Willets*, 112 N. Y. 289; *Laytin* v. *Davidson*, 95 N. Y. 263; *McAlpine* v. *Potter*, 126 N. Y. 285; *Matter of Johnson*, 57 App. Div. 494; *Robertson* v. *de Brulatour*, 188 N. Y. 301.)

*Maurice A. Phelps* for John Wilkinson et al., appellants. There was no statute in effect providing for the allowance or payment to executors or testamentary trustees for receiving real estate until after the death of executors Benson and Page. (*Matter of Ziegler*, 218 N. Y. 544; *Matter of Wanniger*, 120 App. Div. 273; 190 N. Y. 527; *Robertson* v. *de Brulatour*, 188 N. Y. 301; *Beard* v. *Beard*, 140 N. Y. 260; *Matter of Todd*, 64 App. Div. 435.)

*Leroy B. Williams* for Gertrude W. Belden, appellant. It was contrary to testator's intention to resort to the Statute of Descent for the sole purpose of fixing the identity of the persons to take, and then determining the share they should take by another statute. (*Woodward* v. *James*, 115 N. Y. 346; *Armstrong* v. *Galusha*, 43 App. Div. 248; *Woodward* v. *James*, 44 Hun, 95; *Richard* v. *Miller*, 62 Ill. 417; *Bassett* v. *Granger*, 100 Mass. 348; *Baskin's Appeal*, 3 Penn. 304; *Bailey* v. *Bailey*, 25 Mich. 185.)

*Simon Fleischmann* and *William R. Pooley* for Kate M. Page, as executrix of Theodore A. Page, deceased, appel-

lant. The allowance by the surrogate to the executors of Mr. Page, one of the deceased executors and trustees, of compensation for his services as executor and trustee, of an amount equal to one-half commissions for receiving and one-half commissions for sums paid out, was proper. (*Matter of Willets*, 112 N. Y. 289; *Whitehead* v. *Draper*, 132 App. Div. 799; *Matter of Bushe*, 227 N. Y. 85; *Olcott* v. *Baldwin*, 190 N. Y. 99; *Matter of Todd*, 64 App. Div. 435; *Lindsey* v. *Bogart*, 67 N. Y. S. R. 653; *Beard* v. *Beard*, 140 N. Y. 260.)

*Herbert L. Smith* for Belden Wigglesworth et al., appellants.

*Edward A. Freshman* for Title Guarantee and Trust Company, as guardian, respondent. The award of the surrogate of commissions on the sale price of the Manhattan Hotel property to the respective estates of the deceased executors Benson and Page was without statutory authority. (Code Civ. Pro. §§ 2730, 2753.) The equitable conversion of the real estate directed by the will did not make the real estate the basis of the commissions decreed to be paid to estates of the deceased executors. (*Matter of Hamersley*, 99 Misc. Rep. 218; *Matter of Whipple*, 81 App. Div. 589; *Matter of Hayden*, 54 Hun, 197; 125 N. Y. 776; *Matter of Allen*, 96 N. Y. 327; *People ex rel. Andrews* v. *Cameron*, 140 App. Div. 76; *Matter of Ziegler*, 168 App. Div. 735; 218 N. Y. 544; *Matter of Wanninger*, 120 App. Div. 273; 190 N. Y. 527; *Finley* v. *Bent*, 96 N. Y. 364; *Moncrief* v. *Ross*, 50 N. Y. 431; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417.) Granting that the real estate may be deemed personalty for the general calculation of commissions in this estate, nevertheless discretionary allowances may not be based upon the inventory or entire estate, but may be only for actual services in receiving and disbursing the moneys of the estate.

(*Matter of Whipple*, 81 App. Div. 589; *Matter of Hayden*, 54 Hun, 187; 125 N. Y. 776; *Matter of Allen*, 96 N. Y. 327.)

*Edward L. Robertson* for Mead V. Z. Belden et al., respondents. Benson and Page, having died prior to the sale of the Manhattan Hotel, their estates are not legally entitled, as a matter of right, to commissions as executors or trustees, upon the proceeds of such sale. (*Alpine* v. *Potter*, 126 N. Y. 285; *Phœnix* v. *Livingston*, 101 N. Y. 451; *Chisholm* v. *Hammersly*, 114 App. Div. 565; *Matter of Wanninger*, 120 App. Div. 273; *Matter of Whipple*, 81 App. Div. 589; *Matter of Hamersley*, 99 Misc. Rep. 218; *Matter of McCormick*, 46 Misc. Rep. 386; *Matter of Bushe*, 183 App. Div. 832; *Matter of Ziegler*, 218 N. Y. 544; *Matter of Potter*, 106 Misc. Rep. 113.)

*Herbert L. Smith* for Belden Wigglesworth et al., respondents. Commissions to the estates of Cadwell B. Benson and Theodore A. Page are not properly allowable for receiving the Manhattan Hotel property. (*Matter of Worthington*, 141 N. Y. 9; *Matter of Ziegler*, 168 App. Div. 735; 218 N. Y. 544; *Matter of Barker*, 186 App. Div. 317.)

*William Ryan* for Andrew S. White, as executor of Anna B. White, deceased, respondent. That part of the decree of the surrogate awarding Gertrude W. Belden the sum of $9,951.69, the accumulated income of the share of Edward M. Belden, and the sum of $24,262.81 in payment of her share in the interest of said Edward M. Belden, was erroneous. (*Arnold* v. *Gilbert*, 5 Barb. 190; *Meakings* v. *Cromwell*, 5 N. Y. 136; *Bramhall* v. *Ferris*, 14 N. Y. 41; *Hatch* v. *Bassett*, 52 N. Y. 359; *Greenland* v. *Waddell*, 116 N. Y. 234; *Tillman* v. *Davis*, 95 N. Y. 17; *Armstrong* v. *Galusha*, 43 App. Div. 248.)

*L. B. Williams* for Frederick W. Barker et al., as executors and trustees, respondents.

24

HISCOCK, Ch. J. These appeals by various parties spring from an accounting of the respondents, Barker and Knapp, as executors and trustees of one Belden. Many questions arose and the decree made by the surrogate thereon was modified in some of its provisions by the Appellate Division. We agree with the conclusions reached by that court upon all questions save one. We disagree, however, with the reasoning by which it reached its conclusion upon another question which seems important enough to call for some consideration. We shall take up the two questions which we are thus led to discuss, stating separately the appropriate facts in connection with each one of them.

Mr. Belden at the time of his death left a large estate, the bulk of which consisted of real estate. We shall assume for the purposes of this discussion that his will worked an equitable conversion of this real estate, but as a matter of fact it was not sold and converted into personal estate for several years after his death. A trust was imposed upon much of his property which was to continue for ten years unless sooner ended by the termination of two specified lives. He appointed one Benson one of his executors and trustees and made a provisional appointment of one Page as an executor and trustee to take the place of any one of those originally appointed who might die. After surviving a considerable period and discharging his duties in looking after and caring for the property of his testator including the real estate, Mr. Benson died and Mr. Page thereupon took his place, but only survived a short time. The death of both occurred before the testator's real estate holdings had been sold.

Under these circumstances the question has arisen on this accounting, *first*, whether these deceased executors and trustees were entitled as matter of right to commissions for receiving the estate of Mr. Belden including the real estate, and, *secondly*, whether if they were not thus entitled as matter of right the surrogate might still in

the exercise of discretion allow them commissions in proportion to the value of the services which they had rendered not exceeding in any event the commissions fixed by statute, and in the exercise of this discretion might take into account the value of the real estate above mentioned. The surrogate held to the first view and the Appellate Division to the second one.

We think that the Appellate Division was clearly right in holding that these deceased executors and trustees having died before completion of their duties did not become entitled as matter of right to statutory commissions. We regard this question as so conclusively settled by our decision in *Matter of Bushe* (227 N. Y. 85, 88) that nothing would be gained by here repeating the discussion of it.

We also regard that decision as ample authority for the view taken by the Appellate Division that while the estates of the deceased executors are not entitled to collect fees as a matter of right as claimed by them, still the surrogate in his discretion may make what he regards as a proper allowance, not exceeding the statutory rate, for their services for receiving the property, and we think that in doing this he may take into account the value of the real estate which was in their charge.

Until the amendment to section 2753 of the Code of Procedure in 1916, an executor could not have been allowed fees for merely receiving real estate. The Appellate Division, however, thought that because this will worked an equitable conversion of the real estate the latter might be regarded as personal property for the purpose of fixing fees and cited the case of *Lawrence* v. *Littlefield* (215 N. Y. 561) as authority for the proposition that where equitable conversion is accomplished by a will it becomes effective for all purposes and, therefore, would cover the purpose under consideration. We do not think that the authority in question sustains such an unlimited view as this. It may be assumed that where there is an equitable

conversion under a will the doctrine of such conversion will be applied to all details which are involved in construing and carrying out the provisions of the will to which it is applicable, but we do not think that the doctrine should be applied to a matter entirely extraneous to the construction and operation of the will itself, as the fixation of fees, so as to enable an executor to collect fees for receiving real estate on the theory that it was personal property. We reach, however, the same result as the Appellate Division by a different course.

The general rule is that the fees of an executor are to be fixed by the rules and law which prevail at the time when they are settled. (*Robertson* v. *de Brulatour*, 188 N. Y. 301, 316, 317; *Whitehead*.v. *Draper*, 132 App. Div. 799.) In the last case this principle was applied in the opinion written by Justice McLAUGHLIN in a case where the statute invoked in aid of an executor's commissions was not passed until after his death. This is quite akin to the rule that remedies will be applied in accordance with the law which prevails at the time when relief is sought rather than at the time when the injury arose. (*Matter of Berkowitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261.)

In 1916 and before this accounting the amendment to the Code already referred to was adopted, which provided that " The value of any real or personal property, * * * and the increment thereof received * * * shall be considered as money in making computation of commissions," etc. This provision we think entitles the surrogate to take into account the value of the real estate which came under the custody and charge of the deceased executors in determining as a matter of discretion the fees which should be allowed to them.

The other question which arose and in respect of which we agree with the surrogate rather than with the Appellate Division involves an interpretation of certain clauses in the will.

This will was a long and complicated one containing very many provisions and creating as already stated a trust period of ten years. Amongst other provisions it contained those providing for the disposition of income remaining after certain specific bequests thereof and also for the disposition of the remainder of the principal of the general residuary estate after various bequests. It gave to one Edward M. Belden and three sisters share and share alike an interest in any remaining surplus of the net income from his residuary estate and also an interest in any portion of the residuary estate which might remain undisposed of by other and preceding articles and provisions. It then provided in the case of such share both of said income and of said remainder of principal: " In case any of the persons named (thereby meaning amongst others Edward M. Belden) shall die before the termination of said trust period and whether before or after my own death the share or portion of such remainder (either of the principal of the residuary estate or of such surplus income) which the one so dying would have received if living shall be paid to his or her lawful heirs." And referring to said provisions the will then further declared " the term ' lawful heirs ' as used in this will shall be deemed to be the persons to whom real estate would descend in cases of intestacy under the laws of the State of New York in force at the time."

Edward M. Belden died before the completion of the trust period and before the actual conversion into personalty of the real estate constituting the bulk of testator's estate as aforesaid. He left him surviving as his only heirs-at-law and next of kin a mother and three sisters and the question has arisen whether under the provisions above quoted and referred to the share which said Belden would have received if living shall be divided amongst said relatives as personal property under the rule of *per capita*, or as real estate under our Statute of Descent (Decedent Estate Law [Cons. Laws, ch. 13], § 85). They, them-

selves, originally entered into an agreement under which such share in the surplus of income and principal was to be divided under the latter rule, but later this arrangement seems to have been discontinued. The answer to this ultimate question will be decided by the ones which may be given to two underlying questions, one of which has been considered by counsel and the courts below and the other one apparently overlooked.

The first of these constituent questions is the one whether in the provisions under consideration the words " lawful heirs " have been used in their primary and strictly correct sense as words of limitation and representation or whether they have been used to indicate a certain class of people by their relationship to the deceased ancestor merely for purposes of identification and in which case they would be words of purchase. In the former case the rule of *per stirpes* would apply and in the latter case the rule of *per capita*.

In its technical and strictly correct sense the word " heirs " is one of limitation and representation denoting descent and is not one of purchase and it is presumed to have been used by a testator in its correct sense. (*Thurber* v. *Chambers*, 66 N. Y. 42, 47; *Schoonmaker* v. *Sheley*, 3 Den. 485, 490; *Matter of Sanders*, 4 Paige, 293, 296; *Linton* v. *Laycock*, 33 Ohio St. 128, 136; *Fabens* v. *Fabens*, 141 Mass. 395.) This meaning, however, yields to the intent of the testator and if there be evidence in the will of his purpose to use it as a word merely descriptive of a class who are to partake of his bounty such intent and meaning will prevail. (*Bisson* v. *West S. R. R. Co.*, 143 N. Y. 125, 130.)

It seems to us that when we scan these testamentary provisions there is not only no evidence of an intent to use the word " heirs " otherwise than in its ordinary and orthodox meaning but that the intent appears to employ it with precision and with such ordinary meaning. The clauses which we have quoted seek to create the very

result which would have arisen if the property devised and bequeathed had vested in the deceased beneficiary and he had then died intestate. His " heirs " are to take in his place and the feature of heirship is emphasized by reference to the statute governing the descent of real estate in case of intestacy. This, as it seems to us, means much more than a mere identification of people by their relation to a given person. It impresses upon the mind the ideas of representation and of descent which are included in the use of the word " heirs " in its technical sense and are not part of its significance when it is used as a mere word of purchase. Thus we reach the conclusion so far as this question is concerned that the relatives of the deceased legatee took *per stirpes* and not *per capita* by purchase.

The next question which arises is the one whether the amount of the shares which the relatives of Edward M. Belden took as heirs is to be governed by the Statute of Descent applicable to real estate or by the Statute of Distribution applicable to personal property. The Appellate Division thought the latter, apparently being considerably moved to that conclusion by the fact that through the doctrine of equitable conversion the testator's estate was largely to be regarded as personal property. If it was correct in this view then the distribution among the people who were the heirs of Mr. Belden under the rule of *per capita* as now decreed is correct. This question again compels an attempt to fathom the theoretical intentions of a testator and determine what his purpose was as between two different courses which were open to him. This process of interpretation is uncertain and unsatisfactory in this case, as in many others, but the balance of our judgment is that the rule applicable to the descent of real estate in cases of intestacy was intended by the testator to fix not only the identity of persons who should take but also the *quantum* of the shares which they should receive.

The mere fact that a large portion of testator's estate was theoretically personalty does not bar the conclusion which we have reached or under the circumstances of this case stand as much of an argument in its way. Even if the estate had been actually instead of theoretically personal property the testator would have had a perfect right to give it to the objects of his bounty under the rules applicable to the descent of real estate rather than the distribution of personal property if he so chose. (Jarman on Wills, m. pp. 927–929.) But in this particular case it was not at all unnatural that he should regard these provisions as dealing with real estate and to be interpreted in accordance with all of the rules governing descent of such property. As a matter of fact the bulk of his estate actually consisted of real property. He knew that it was possible as in fact happened that it would continue to be real property beyond the trust period which he had fixed and, therefore, beyond the contingent death for which he was providing, and under such conditions it was not at all unnatural that for all the purposes of these provisions he should deal with it in terms of descent rather than of distribution. The will on its face bears ample evidence of the care and skill with which it was prepared. Crediting the testator with this learning and skill of the trained legal mind which actually prepared the instrument there was no lack of knowledge or confusion of thought in respect of the application of the Statute of Descent and the Statute of Distribution to the disposition of his property. Other clauses in the will make it perfectly apparent that these statutes were in the minds of those who prepared the will and that when it was desired to secure a distribution *per capita* this desire was not defeated by ignorance or carelessness.

Under such circumstances, the testator declared that the heirs who were to take the portion of the ancestor dying before a certain date were to be those people who

would take real estate under the Statute of Descent. He did not think at all in terms of personal property and the Statute of Distribution. His thoughts in providing for the death of the primary beneficiary were fixed on real property and the statute governing its descent as outlining the rule which should control the secondary and further disposition of this property. We are unable to grasp any reliable sign of an intention that this predominant thought of real property should yield when it had merely identified the persons who were to take and that then another statute should be invoked to determine their shares. Such a course would not only be, as it seems to us, unnatural but it presented the possibility of entirely defeating the testator's purpose. The rule of descent would cover and include any degree of heirs whom the dead ancestor might leave. The Statute of Distribution would only extend to certain degrees of relationship and those not very remote. Hence, under the theory pressed upon us there would be a possibility, for similar provisions applied to many others than Mr. Belden, that an ancestor dying would leave persons who under the express terms of the provision would be heirs but for whom under the Statute of Distribution no provision would be made or share defined.

We, therefore, think that in the disposition of this question the surrogate rather than the Appellate Division was correct and it seems to us that this view is confirmed by what was decided and said in *Woodward* v. *James* (115 N. Y. 346). There the testator died holding both real estate and personalty. He gave to his legal heirs the remainder of income from his property over and above that bequeathed to his wife for life and he also gave to his " legal heirs " except as otherwise provided " the reversion and ownership of his (my) estate and property after the death of his (my) wife " who had a life estate. The question there came up as here whom the testator meant by " legal heirs " and whether he intended to

designate by that phrase the individuals merely who would take or to fix also the quantity of interest which should devolve upon each, and it was there said: " If he used the words ' legal heirs ' solely to identify the individuals who were to take as devisees, they would be deemed, in general, to take as purchasers, as if all had been named, and, in the absence of any modifying language of the will, would take as tenants in common and *per capita.* That, of course, assumes that the interest devised is in some way different from that which would have descended had no will been made. But the testator, I think, himself indicated the sense in which he used the phrase and what he meant by it. Where he declares the consequences of the forfeiture of any share he uses this language: ' The share that would otherwise have gone to him or her shall be divided among the remaining heirs *according to law.*' This, undoubtedly, means according to the law which governs in a case of intestacy. It evidently respects the quantity of interest as well as the persons who are to take, for the division, that is, the proportion, is to be according to law." (p. 358.) In our opinion this language in its fair interpretation and substance is not much different than that which was used in the present case. Here it is not provided in words that the property shall be divided among certain heirs " according to law," but it is provided that the property shall go to those who are heirs under the statute governing ·the descent of real estate in case of intestacy and as we have already reasoned it seems to us that that meant that such statute was relied upon not only to fix the identity of the people who were to take but also the quantity of the shares which they were to take, and that it was not contemplated that they should be heirs under the Statute of Descent for one purpose and next of kin under the Statute of Distribution for another purpose. What was said in the case of *Daggett* v. *Slack* (8 Metcalf [Mass.], 450) also seems to confirm this view. It is true that that

case was dealing with the devise of real estate, but what was said is applicable to the present case. It was held and said that the devise to "heirs" designates not only the persons who are to take but also the manner and proportion in which they are to take. (See, also, Jarman on Wills, m. p. 955; *Bullock* v. *Downes,* 9 House of Lords Cas. 1.)

We find no criticism or question of the propriety of the provision in the surrogate's decree that in distributing the property originally given to Edward M. Belden amongst his heirs-at-law, the mother, Gertrude M. Belden, should be allowed to accept a gross sum in lieu of her life interest, and, therefore, we do not deem it necessary to discuss that provision.

In accordance with these views the order of the Appellate Division should be affirmed except in respect to its provisions for the disposition of the share originally willed to Edward M. Belden and in that respect it should be reversed and the decree of the surrogate affirmed. The questions certified to us should be answered as follows: Questions Nos. 1, 2 and 4 in the negative and question No. 3 in the affirmative.

Costs should be allowed as follows:

A separate bill of costs against Helen C. Benson, as executrix, etc., of Cadwell B. Benson, and David B. Page et al., as executors, etc., of Theodore A. Page, should be allowed to each respondent or set of respondents who appeared upon the argument by separate counsel and filed a brief in opposition to the claims of said executors; to the appellant Gertrude M. Belden costs in this court and the Appellate Division against Andrew S. White, as executor, etc.

HOGAN, CARDOZO, POUND, MCLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., not sitting.

Ordered accordingly.