Matthew M. Levy, J.
In this proceeding, involving a testamentary trust, the representatives of two deceased trustees ask for a final order to settle the account of the trustees, to construe the will of the decedent and direct the distribution of the fund in the trust, to determine and direct the payment of certain fees and expenses, and to determine and allow certain commissions. A number of issues are reqmred to be resolved. The most important — and the most interesting— of the problems is that which involves a bequest to the Trudeau Sanatorium, at Saranac Lake, New York.
Incorporated in 1889 as a domestic charitable corporation, Trudeau is now known as the Trudeau-Saranac Institute, Inc. At the time of the execution of the will, in May of 1929, Trudeau’s business and objectives were “ (1) the reception, care and treatment of persons afflicted with tuberculosis and other diseases; (2) the prosecution of researches into the causes, the nature and the treatment of the said diseases; (3) the teaching of all that pertains to the said diseases; and (4) the establish *1074 ment and maintenance of a sanatorium, laboratories, and schools, together with cottages or buildings in connection therewith, for the said purposes.” For many years prior to December 1, 1954, Trudeau-Saranac Institute, Inc. (under its present name or under its former names) was engaged primarily in two activities which were conducted at Saranac Lake, New York: the treatment of patients suffering from tuberculosis and other respiratory diseases, and research in connection with such diseases and with the treatment thereof. During that period it maintained a sanatorium at Saranac for the treatment of tubercular patients, and a number of laboratories, schools, departments and divisions at Saranac and elsewhere.
The testatrix, Caroline King Lee, suffered from tuberculosis of the throat. She used to visit Saranac quite often, and eventually purchased a home there. She occupied the house at Saranac for long intervals of time, and she had some treatments for her illness at Trudeau. She became interested g*enerally in the treatment of and cure for tuberculosis and specifically in the hospitals in the Saranac area and in Trudeau. The testatrix died on July 23, 1929, a resident of the State of New Jersey, and her will (executed the preceding May) was there duly admitted to probate. In that will she directed that a trust fund in the amount of $100,000 be set up for Christine Elizabeth Kuebler (“ my valued friend and devoted nurse companion ”), the income to be paid to her for life, and, on her death, the principal of the fund to be distributed in the amounts of $50,000 to various individuals and $50,000 to various charitable organizations. The clause in the will (par. “Fourth”), to which present attention must be directed, reads as follows: “ Thirty-eight thousand dollars ($38,000) thereof to ‘ The Trudeau Sanatorium? of Essex County, New York, incorporated under the laws of New York, March 4, 1889, and I request the Board of Trustees of said sanatorium to use a portion of the said sum of thirty-eight thousand dollars ($38,000) for the purpose of building a cottage to be known as the ‘ Lee Memorial Cottage ’ for patients resorting to said sanatorium, and to invest and keep invested so much of said sum as may not be expended for such purposes and to apply the income therefrom to the upkeep of such cottage and towards the cost of maintaining such patients.” In article Twelfth of her will, the testatrix included in her residuary estate “ all lapsed legacies and any part of my estate which may not have been effectually devised or bequeathed.” The life beneficiary, Christine Elizabeth Kuebler, died on February 20, 1954, a resident of the State of New Jersey. Elizabeth King Davis, a cousin of the testatrix, *1075 was the residuary legatee; she died on April 11,1942, a resident of the State of New York.
The first question presented is whether this court has and should exercise jurisdiction in the premises. It is my view that (in the circumstances disclosed by this record) it has and that it should, although the settlor died a resident of New Jersey (National City Bank of N. Y. v. Beebe, 131 N. Y. S. 2d 67, affd. 285 App. Div. 874, appeal dismissed 308 N. Y. 960), and although a testamentary and not an inter vivos trust is involved (cf. Matter of Lehman, 284 App. Div. 888; Matter of Ranft, 268 App. Div. 136; Matter of Smith, 120 App. Div. 199; Post v. Ingraham, 122 App. Div. 738; Noll v. Ruprecht, 256 App. Div. 926, affd. 282 N. Y. 598; Matter of Deutsch, 186 Misc. 446, affd. 270 App. Div. 920; Matter of Volk, 46 N. Y. S. 2d 459, 461, affd. 267 App. Div. 818, 868; Sullivan v. Title Guar. & Trust Co., 167 F. 2d 393; Ris v. Ris, 257 App. Div. 845; Ninth Annual Report of N. Y. Judicial Council, 1943, p. 308). The funds constituting this trust are and have been physically located in New York State. The trustees were residents of this State. All interested parties have appeared generally in this court; and, after initial presentation of the matter and a conference in chambers, the parties entered into a stipulation with reference (in part) to jurisdiction, the relevant portions of which read as follows:
“ First: That the Supreme Court of the State of New York, County of New York, has jurisdiction in rem in the above entitled matter and also in personam of all the parties interested therein, and all said parties hereby submit to said jurisdiction and consent to the exercise thereof by the said Court.
“ Second: That the Supreme Court of the State of New York, County of New York, is the proper forum in which the above entitled proceeding should be brought, and all parties interested therein hereby consent to the jurisdiction of said Court.”
The existence or assumption of jurisdiction does not, of course, necessarily involve a chauvinistic application of domestic judicial edict. For, as I see the second problem presented in this proceeding (the law of which State governs!), I find that it is appropriate to construe the will according to the law of New Jersey (Decedent Estate Law, § 47), which, quite fortunately and fortuitously (although equally incidentally and coincidentally), appears — on the critical issues — not to be in conflict with the law of the State of New York — at least insofar as the laws of those States are presently ascertainable by me. Nor does it envisage a conflict between the limited jurisdiction of our Surrogate’s Court on the one hand, and the general juris *1076 diction of our Supreme Court on the other. For no proceedings are pending in any of the Surrogate’s Courts of this State with respect to the will or trust here involved, and none is likely or contemplated within the foreseeable future.
The principal issue revolves around the contention of the heirs of the residuary legatee that the bequest to Trudeau has lapsed, and that, in consequence, by the express terms of the will, the failure of the legacy causes it to fall into the residuary estate. In support of their contention that the legacy has lapsed, these heirs urge that the direction to erect and maintain — as a part of the sanatorium — a cottage (to be known as the “ Lee Memorial Cottage ”) for patient residential purposes is mandatory, and that since Trudeau has abandoned such type of treatment and care, the testatrix’ direction will not be effectuated by an award to Trudeau. At this point it would be meet to present a short statement of the relevant facts as disclosed by the record before me.
There has, for a number of years, been a nation-wide decrease in the number of tubercular sanatorium patients (including those at Trudeau in Saranac). This is due to several causes, indicating (quite happily) that scientific and social development and understanding are constantly and effectively seeking to cope with this malady and its ravages. Among these causes are the early detection of the disease, the use of new drugs and of new surgical methods in treating such diseases, and free tuberculosis care for the general public. Thus it is that recent changes in the treatment of tuberculosis have diminished the need for sanatoria. But the need for research and study remains, for there are still many important and unsolved problems in the area of tuberculosis and its treatment, and new problems in pulmonary diseases have arisen due to the increased air pollution in densely populated areas and to the use of new agents and materials in industry.
The decline in the number of tubercular patients continued gradually at Trudeau, so that while in 1930 its patient census in the sanatorium had been in excess of 210, the census decreased in 1954 to only 70 patients. This diminution in in-patient population resulted in a substantial financial loss to Trudeau, and in view thereof Trudeau determined that the funds devoted to the running of its sanatorium as such might better be made available for increased inquiry in the field of respiratory diseases. As a consequence, during the month of October, 1954, Trudeau’s board of trustees decided to and did close its sanatorium on December 1, 1954, insofar as the treatment of its tubercular patients was concerned, but continued its research *1077 and other corporate interests, except those necessarily suspended by the closing of the sanatorium. With the closing, emphasis at Trudeau was of necessity shifted away from diagnostic services and towards more research activity, and an effort has been and is being made to use some of its plant and buildings at Saranac Lake for study and other medical functions which would be suitable for those purposes. There are about 60 persons now employed by Trudeau, with an annual payroll of approximately $280,000.
The long tradition of Trudeau has been to advance knowledge and to transmit it for the benefit of persons with tuberculosis and other pulmonary diseases. The aim was and is to learn more and more about the cause, prevention and treatment of these disorders, and, as information accumulated, to communicate it to others so it could be applied for the benefit of all. In this work, Trudeau collaborates with the United States Health Service. And Trudeau has become recognized throughout the world as one of the chief research institutes studying and contributing to the understanding of chronic lung diseases, with special emphasis on the hazards caused by dusts found in various industries.
It would thus appear from the undisputed and the stipulated facts that the testatrix died July 23, 1929, leaving a will dated May 6, 1929; that the life income beneficiary of the trust died February 20, 1954; that Trudeau was operating its sanatorium for the care of patients on July 23, 1929 (the date of death of the testatrix), and, thereafter, continuously, until and after February 20, 1954 (the date of death of the life beneficiary of the trust); that Trudeau did not close the doors of its sanatorium to residential patients until December 1, 1954; that this activity was only part of its corporate functions; that there is no evidence that Trudeau ever declined to accept the legacy bequeathed to it pursuant to the terms of article Fourth of the will; and that Trudeau’s corporate objects and functions have been consistently limited to the general field here noted. It is my view, on this state of facts, that Trudeau was an existing corporate entity entitled and empowered to receive the legacy not only in January, 1929, at the date of the death of the testatrix, but also at the time of the termination of the trust by virtue of the death of the life-income beneficiary in February, 1954, thus precluding any effective claim that its legacy had lapsed. Lapsation did not result by reason of the fact that, on December 1, 1954 (almost 10 months after the trust terminated), Trudeau ceased taking tubercular patients in its sanatorium, and thus affecting one of its several corporate functions. On the contrary, at the *1078 time of such cessation in December, 1954, the testatrix had already died and the trust had already terminated, and in consequence the legacy to Trudeau had already become vested in it. In my view, under the law of the State of New York, Trudeau had a vested remainder at the time of the death of the testatrix, which would take effect in possession on the death of the life tenant. If the person who or corporation which is to take an interest is in being and ascertained, and there is no uncertain event forming a condition precedent to the taking of the estate, his or its interest is “ vested ”. (Moore v. Littel, 41 N. Y. 66; Dougherty v. Thompson, 167 N. Y. 472; Matter of Weaver, 253 App. Div. 24, affd. 278 N. Y. 605.) And it is axiomatic in this State that, once a legacy has become vested it cannot, thereafter by divested unless the will so provides. And this will does not. Under the laws of the State of New Jersey, also, when the right of future enjoyment is limited on an event that is certain to happen — such as the death of a life tenant — the right vests Upon the testator’s death (Barrett v. Barrett, 134 N. J. Eq. 138, 158). However, there does not appear to be any decisional authority in New Jersey for the proposition that in such a case the legacy must be paid. In fact the reported cases would tend to indicate that even in such an instance the legacy may lapse (see, e.g., Grebenstein v. St. John’s Evangelical Lutheran Church, 3 N. J. Super. 422).
But this does not dispose of the matter, for it is urged by Trudeau that the “ request ” contained in the will of the testatrix to “ the Board of Trustees of said [Trudeau] sanatorium to use ” the bequest in part “ for the purpose of building a cottage to be known as the ‘ Lee Memorial Cottage ’ for patients resorting to said sanatorium ’ ’ and as to the balance of the bequest to “ apply the income therefrom to the upkeep of such cottage and towards the cost of maintaining such patients ’ ’ merely indicated a desire, and was not compulsory. I disagree. Under the laws both of New York and of New Jersey, the words used by the testatrix in setting up the trust here are mandatory, not precatory. Taking the will as a whole, I hold that the ‘ ‘ request ’ ’ of the testatrix for the building of a cottage at Saranac and its permanent maintenance for patients there — so that she might be memorialized in this area of her devoted interest — must be given the same force and effect as though the language had been “ it is my will and I do hereby order and direct ” (Deacon v. Cobson, 83 N. J. Eq. 122; Matter of Bluestein, 302 N. Y. 760; Spencer v. Childs, 1 N Y 2d 103).
Again, that conclusion does not make for a final resolution of the issue. It is the fixed policy of the law in both New Jersey *1079 and New York to uphold charitable bequests and trusts as valid wherever possible and a truly charitable trust does not necessarily lapse because the donor created it for a specific purpose or as a memorial to himself. If property is given in trust, to be applied to a particular charitable purpose, and it becomes impossible or impracticable or illegal to carry out that specific purpose, and if the settlor manifested a general intention to devote his property to charitable purposes, the trust will not fail, but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor (Mirinda v. King, 11 N. J. Super. 165; Grebenstein v. St. John’s Evangelical Lutheran Church, 3 N. J. Super. 422, supra; Wilbur v. Asbury Park Nat. Bank & Trust Co., 142 N. J. Eq. 99, affd. 2 N. J. 167; Fidelity Union Trust Co. v. Ackerman, 18 N. J. Super. 314; Matter of Potter, 307 N. Y. 504; Matter of Neher, 279 N. Y. 370), and, if possible, will continue the memorialization desired and directed by the testatrix. (Wendell v. Hazel Wood Cemetery, 3 N. J. Super. 457, affd. 7 N. J. Super. 117; Matter of Neher, supra.) The decision in Bankers Trust Co. v. New York Women’s League For Animals (23 N. J. Super. 170) relied on for a contrary view, is readily distinguishable.
In the instant case, I hold that the cy pres doctrine should be invoked and that the court should exercise its power in that regard. There can be no disagreement that the bequest here is a charitable one and that it cannot be carried out in the precise manner provided for by the testatrix. Indeed, there is no dispute that circumstances have changed since the date of the will and the date of the death of the testatrix. At that time Trudeau Sanatorium was in full use, and the testatrix could not foresee that the treatment for tuberculosis would be so effective as eventually to do away with the need for the resident facilities. There is some dispute as to whether the will discloses such a general charitable intent as to justify the application of the cy pres doctrine. I think it does. The testatrix set aside one half of the $100,000 trust fund for charity, of which $41,000 was concerned with medical institutions at Saranac, $8,000 to three charities in New York City, and $1,000 to a church in New Jersey. Of the $41,000 allocated to the Saranac area, $38,000 was earmarked for Trudeau. As I read the will, it is obvious to me that the amount she gave to charity from this fund (in proportion to the amount she gave to various individuals) quite clearly shows the general charitable intent of the testatrix, and that the amount she gave to Trudeau specifically quite clearly shows her devotion to this endeavor.
*1080 Under the cy pres doctrine I direct (in keeping with the principle of the suggestions made by the Attorney-General of the State of New York and of Trudeau), that the bequest be paid to Trudeau, to receive the same as a memorial endowment fund, to be known as the ‘ ‘ Lee Memorial Endowment Fund ’ ’, and to use the income for the benefit of persons suffering from respiratory or other similar disorders.
I shall now pass to other questions. They do not, I think, require extended discussion.
(1) There being no objection to the distribution of the $1,000 Reception Hospital legacy, it should be divided equally among the four charities, in conformity with the order of dissolution made by the Supreme Court, Essex County, dated May 18, 1950. Trudeau should receive a share (one fourth) of that legacy.
(2) The Princeton Bank and Trust Company, as executor under the will of the life beneficiary, objects that the accounting is incorrect in that there was a misapplication of the salvage of a mortgage insofar as the apportionment of principal and income of the trust is concerned. It would appear that the correct method of the application of the proceeds of the salvage operation of the mortgage in the trust is as stated by the objector in its brief (see Matter of Chapal, 269 N. Y. 464; Matter of Otis, 276 N. Y. 101). Pages 6 through 9 of that brief should be presented in affidavit form by the objector as an amendment to the earlier computation suggested by it. As there is no reply on this by the petitioner, the accounting should be corrected to conform therewith.
(3) No objection has been raised to the “ receiving commissions ” earned by the first deceased trustee during his lifetime, but an issue is presented upon the objection to “ paying out commissions ” to his representative. Commissions are generally payable to trustees for services rendered by them as such. It is my view that the representative of the first deceased trustee performed no essential service to this estate for which he should be compensated. That view is supported by statute, precedent and fact.
In regards to the compensation of testamentary fiduciaries, the Surrogate’s Court Act and the Civil Practice Act are to be read together (Farmers’ Loan & Trust Co. v. Turner, 242 N. Y. 240), and there should be no differentiation between the rulings of the Supreme Court and those of the Surrogate’s Court in determining such compensation. Section 1548 of the Civil Practice Act provides in substance that (in addition to the just, reasonable and necessary expenses actually paid by the trustee, and to the just and reasonable compensation for legal services, *1081 if the trustee is an attorney) “ the court must allow to such trustee for his services in such official capacity, the following commissions ”. There is similar language in the first paragraphs of sections. 285 and 285-a of the Surrogate’s Court Act. In section 257 of the Surrogate’s Court Act (which concerns itself with accountings by representatives of deceased testamentary trustees) it is provided that “ Upon the settlement of the account the surrogate in his discretion may allow to the accounting party reasonable compensation for any service rendered by him to the estate accounted for.”
If an executor, trustee or committee dies before having completed his duties, the estate of such deceased fiduciary is entitled to commissions based only on what has been received and what has been paid out in his lifetime (Matter of Hermance, 120 N. Y. S. 2d 562). A testamentary trustee who dies before completion of his duties does not become entitled as a matter of right to commissions, but the court may, in its discretion, make an allowance to his representative, not exceeding the statutory rate of commissions (Matter of Bushe, 227 N. Y. 85; Matter of Barker, 230 N. Y. 364).
From the record before me, it appears that this now deceased trustee served as cotrustee from May, 1930, until the date of his death in September, 1936, and that from 1936 until the death of the life beneficiary in February, 1954, the surviving trustee served as sole trustee. The only service performed, therefore, by the first deceased trustee was to receive the trust fund and to pay out the income for six years during his lifetime. For the next 18 years the surviving trustee administered the fund and paid out the income. Accordingly, the objection is sustained.
(4) No objection having been made to the charges of the Bank of New York, to the fees and expenses applied for by some of the attorneys and to the engagement of a certified public accountant and to the charge for his services — and as the amounts requested appear to be reasonable — they are allowed.
(5) As to the fees of the attorneys for the petitioners, no affidavit of services has been filed and the amount desired has not been expressed to the court or been the subject of due notice to the interested parties. (Cf. Matter of Decatur Radio [Credit Men’s Adj. Bur.], 205 Misc. 905.) Accordingly, determination as to this allowance must be held in abeyance pending the filing of such affidavit of services (which should specify the amount applied for) and the filing of proof of service of a notice to all parties that such affidavit has been filed and is available for inspection, and that the allowance requested is in a specific amount. This affidavit and proof should be filed within 20 days *1082 from the date of publication of this opinion, and any objection thereto may be presented within 10 days thereafter.
(6) There is no necessity for the appointment or qualification of any other fiduciary for interim purposes, or for the appointment of a referee for hearing purposes. Distribution is directed in accordance herewith. Settle order, after compliance with my directions as to the fees of the attorneys for the petitioner (item 5, above).