S. Samuel Di Falco, S.
The testator died in 1904. In his will he created a trust of $140,000 for the life use of his daughter, Anna H. Kinney (then known as Anna D. Hart). Upon her death, the principal of the trust is bequeathed to her “ then heirs-at-law” in accordance with the law of the State of New York in force at the time of her death. Mrs. Kinney died on January 30,1956. Originally she had been one of three trustees. One of them died on February 2, 1932, leaving Mrs. Kinney and her brother as surviving trustees. The brother died on October 3,1951, and from that time, Mrs. Kinney acted as sole surviving trustee. The present account was filed by the executor under her will.
Objections to the account have been filed by the four remaindermen who are the children of the deceased trustee-beneficiary. Their objections are not directed to any act of neglect, mismanagement or breach of trust on the part of their mother, but rather to the account as formulated by her executor.
The first amended objection relates to the allocation to the income account of certain stock dividends. At the hearing, the objectants conceded that with two exceptions, all of the stock dividends would be apportionable to income under the rule stated in Matter of Osborne (209 N. Y. 450), but they contend that the income beneficiary had made a gift of the entire dividend in each case to the principal account. With respect to 7 and 143/200ths shares of stock of Standard Oil Company of New Jersey, the accounting party contends that the shares were purchased by Mrs. Kinney “ to even out the stock dividends ” when the only cash in the trust bank account consisted of income to which Mrs. Kinney was entitled in her status as income beneficiary, and that such shares of stock belong to the income beneficiary. It is the contention of the objectants that in purchasing these shares of stock, their mother intended to make them part of the principal of the trust. In respect of the shares *260 of stock of Lily Tulip Cup, the parties are in. dispute as to whether the corporate distribution was in fact a true stock dividend. However, the objectants argue that even if the distribution were a dividend, their mother intended to waive any rights she might have to it as income beneficiary, and that she deliberately allocated all of these shares to principal. Insofar as this objection relates to the method of apportionment of the conceded stock dividends, it is withdrawn. Insofar as this objection raises other issues, it 'becomes academic under rulings on later objections.
The second amended objection is to the allocation of the same stock dividends to income on the ground that the sole surviving trustee, who was also the sole income beneficiary, waived any allocation of any stock dividend and made a valid gift of all of the dividends to the principal of the trust.
At the time when there were two or more trustees in office, Mrs. Kinney appears to have relied upon her cotrustees and to have given less of her attention to the administration of the trust. During the period when she was the sole trustee, she expressed to members of her family her dissatisfaction with the way that the trust had been administered. The present accounting shows realized losses of $83,390.52, as against realized gains of $15,668.94. The inventory value of the property on hand is $90,517.82. Mrs. Kinney appears to have possessed substantial resources of her own, and to have attended to the investment of her own assets. A witness, who conferred frequently with Mrs. Kinney on her personal investments, testified that she was a person with knowledge of security transactions, stocks and bonds, and that she appreciated the difference between a stock split and a stock dividend.
Two of her sons were married, and Mrs. Kinney had a practice of making gifts of shares of stock to her daughters-in-law. Sometimes she gave them cash so that they could make purchases of stock. Her sons were presumptive remaindermen of the trust and would be benefited or damaged in proportion as the value of the assets increased or decreased. Mrs. Kinney told one of her daughters-in-law that the trust ‘ ‘ had been mismanaged and that they had very little records and she was surprised that it hadn’t grown more ”. She told the same witness that she was trying to build up the trust, and that to accomplish this purpose she was investing in common stocks, although she knew that under the terms of the will it was not proper for her to do so. Mrs. Kinney also said that “ she had waived commissions and had waived stock dividends ” and that at times “ she has even put money in to round out stocks ”. It is con *261 ceded that Mrs. Kinney did purchase fractional shares of stock and that she paid for them out of income of the trust. It is conceded also that she purchased these shares in the name of the trust. It appears in the record that during the period when Mrs. Kinney was purchasing shares of stock for the trust, she was also buying securities out of her individual funds for her own account, and that these securities were in her own name and were no part of the trust at all. It is patent, therefore, that she understood the difference between registering the shares in her name as trustee and registering them in her own name.
Mrs. Kinney told another of her daughters-in-law “ that she felt that the trust was mismanaged or managed very poorly in years gone past and it was in very bad shape, and she had been trying to build it up a little, ■ and from time to time she would round out shares and she wouldn’t take any * * * [trust] fees; she didn’t want them. She felt that it was her responsibility to build up the trust a little.” Mrs. Kinney expressed the opinion that the trust estate had made very poor investments, and she said that she did not want to deplete the trust in any way or to take anything out of it.
Mrs. Kinney had provided for her children in her own will, but she had created trusts under which they would enjoy only the life use of the funds. The trust corpus under the will of her father would go to her children outright, but as the gift of their grandfather. It was apparently Mrs. Kinney’s purpose that her children receive from their grandfather’s estate all that he had meant to give them. To accomplish that purpose, she endeavored to recoup some part of the substantial losses without making great contributions from her own capital.
There can be no doubt upon this record that Mrs. Kinney knew and understood precisely what she was doing, and that she deliberately and purposefully allocated shares of stock and cash to the principal account in order to make good the depletions and losses that the trust had suffered. She several times discussed the waiver of her right to stock dividends. She consciously and deliberately waived and renounced any right that she had as income beneficiary in any of these stock distributions. She contributed to principal, in the form of stock purchases, income which she knew she was entitled to withdraw and use as her own.
It is not material to determine here whether there was any legal liability to the trust estate on the surviving trustee, or upon any of them, or whether there was any possibility of a surcharge against her or against any of them. Mrs. Kinney was not concerned with any compulsion that the law might exert *262 upon her. Her own experience convinced her that the trust had not been well managed and she believed that she ought to do what she could to repair the damage. She did not contribute personal funds to reconstitute the fund as originally set up. She did use a part of the income and profits of the fund to compensate for the losses resulting from what she referred to as poor management. Whether we call it waiver, renunciation or gift, it is clear that Mrs. Kinney gave up and surrendered any rights that she might have in the stock dividends, as income beneficiary, and that she intended to vest complete ownership of all of these dividends in the principal account.
The second amended objection is, therefore, sustained.
The third amended objection is to losses sustained in investments which the trustees had no authority under the will to make. The accounting party concedes that the objection is proper and both parties agree on the amount of the surcharge at $5,232.17.
The fourth amended objection alleges that schedule F of the account does not set forth all of the income distributed to Mrs. Kinney. The objectants have not produced any proof to establish that income payments were in fact made to Mrs. Kinney in amounts in excess of those reported in the account. The objectants argue that the burden of proving each and every item of payment to Mrs. Kinney between February, 1932 and January, 1956, rests upon the accounting party and that there being no proof on either side, the objection must be sustained. The objection, however, does not challenge the making of payments which are reported in the account; it asserts affirmatively that there were additional payments. That burden is upon the objectants and their objection is dismissed for failure of proof.
The fifth amended objection is directed to Schedules F and F-l of the account and supplemental account, insofar as they indicate that the sum of $7,579.66 is due from principal to the. estate of the deceased income beneficiary. It is conceded that this sum was computed by the accounting parties on the basis of the principal and income schedules which the accounting; party has prepared and which are a part of the accounts herein. Based upon these schedules, the accounting party claims that the principal account contains $7,579.66 more than it is entitled to retain, and that the income account is allotted that much less than it was entitled to receive. Some of the rulings which are. made herein will require adjustment of that figure in any event. The objection will be sustained to the extent that the accounting party will be directed to recompute and adjust the account to accord with the decision herein. Final decision on the amount. *263 owed to income, if any, will be reserved for the settlement of the decree herein.
The sixth amended objection is to the claim for additional commissions for receiving and paying out principal over and above the items on which commissions were heretofore awarded. The amount involved is relatively very small because the commissions are based only upon the gains realized during the present accounting period and the administration expenses actually paid during the same period.
The law is well settled that a trustee who dies before completion of his or her trust duties, does not become entitled, as a matter of right, to statutory commissions, but that, in the discretion of the court, a reasonable allowance, not exceeding the statutory commissions, may be made for services rendered to the trust estate by the deceased trustee. (Matter of Barker, 230 N. Y. 364, 371; Matter of Bushe, 227 N. Y. 85.) It is conceded by the accounting party that the deceased trustee has no claim to annual principal commissions. There is no issue respecting commissions on income, because the trustee was also the income beneficiary and any income commissions would be payable from her own income.
The evidence clearly reveals the intent and purpose of Mrs. Kinney to make no claim to commissions from principal. It may be true that she did not make an irrevocable waiver of commissions to which she might be entitled at a future time and that her expressions of intention with respect to commissions would not bar her from changing her mind as to future commissions. Insofar as this record shows, she never had any change of intention during her lifetime. No annual principal commission is claimed for any year during the entire period. In the exercise of the discretion of the court and upon the entire record herein, the court will not award any further compensation to the estate of the deceased trustee.
The seventh amended objection is to Schedule Gr-1 of the account which reports certain investments as having been made for, and as belonging to, the income account. As hereinabove stated, it was conceded that Mrs. Kinney used cash from income to round out stock purchases, and that the stock so purchased, was registered in the name of the trust. The evidence clearly indicates her intent to restore principal losses and to add these investments to the principal account. She contributed the cash to the principal account with the intent that the investments constitute part of the corpus of the fund. Her estate has no claim to the share thus purchased.
*264 The schedule also lists exchange transactions, in addition to the new investments of cash, but the court understands all of these transactions as flowing from original new investments and as raising no additional issue of fact. The seventh amended objection is sustained.
The eighth amended objection is to the apportionment to income of the total sum of $8,204.20 as a result of two different mortgage salvage operations. There is no evidence that Mrs. Kinney knew that she had any rights to any part of the gross proceeds of the salvage operations, or that she intended to waive her rights to this fund and to make a gift of it to principal. The account sets forth the apportionment of the proceeds of the salvage operations. In the absence of proof of an intent to waive her rights with respect to this fund, the objection is overruled.
The ninth amended objection is to the claim of the accounting party to additional income in the sum of $335.76 representing realized gains on sales of shares of stock which were claimed by income. It is conceded that the ruling of the court on the second objection will dispose of this objection.
The tenth amended objection has been withdrawn.
Certain records were received in evidence at a prior hearing, subject to objectants’ motion to strike them from the record. The court has not based its decision upon any of these records and the question of their admissibility is, therefore, academic.
Submit decree on notice settling the account accordingly.