William B. Brennan, Jr., J.
These proceedings involve the judicial settlement of the accounting now made by the surviving trustee and legal representatives of a deceased trustee under a trust indenture made by one Ambrose Fry on September 24, 1941, pursuant to the terms of which the trust terminated on December 2, 1960. The sole corpus of the trust at its inception consisted of 600 shares of stock of a closely held corporation (which had a total issued and outstanding capital stock of 1,000 shares). The corpus now consists of 400 shares, the remaining 200 shares having been distributed during the course of trust administration as required by the trust indenture.
Two income beneficiaries and remaindermen, whose interests in income and in principal since October 1, 1948 have been 2/35ths of the whole, have filed objections attacking the valuation of the principal and consequently the computation of commissions ; and also questioning the legal fees sought by counsel for the accounting fiduciaries. A consideration of the objections and of the various prayers for relief of the petitioners requires a brief reference to the factual background.
Prior to September 24, 1941, the corporation had an authorized and outstanding issue of 1,000 shares of common stock of which Ambrose Fry owned 600 shares. The remaining 400 shares were held in varying amounts by four other stockholders. When the trust was created on that day with a corpus consisting of said 600 shares, and for some time previously, the by-laws of the corporation contained a section (art. VI, § 5) imposing restrictions upon the sale or transfer of its shares of stock. The restrictions required that offers of such stock be made first to Fry or his executors, then to holders of record related to Fry by blood or marriage, then to other holders of record, following which any unaccepted shares would be otherwise transferable. The purchase price to the restricted classes of offerees was fixed at book value at date of acceptance subject to adjustments and considerations stated in the by-law. Because these restric *182 tions applied to the 600 shares placed in trust by Fry, the remaining stockholders of the corporation executed waivers of the restrictions to which further reference will be made.
Fry died on October 22, 1941. The 600 shares placed in trust were properly included as part of his gross estate for Federal estate tax purposes and became the object of contested valuation proceedings.
The estate, relying upon the restrictive by-law, returned the stock at a value of $129 per share, the book value at May 31, 1941, the close of the fiscal year of the corporation immediately preceding Fry’s death. The Commissioner of Internal Revenue fixed the value at $316.52, which was about 10 times average earnings for a six-year period (Estate of Ambrose Fry, 9 T. C. 503, 508). Upon appeal to the Tax Court of the United States, that court, after reviewing all of the evidence, said (p. 509) : “It does not lead irresistibly to any amount as the obviously correct value but, since a finding of a precise amount must be made, the Court has concluded, after considering all of the evidence in the case, that the value of the stock at the date of the decedent’s death was $245 per share.” Although the opinion does not state the basis for this valuation, it apparently was computed by taking the book value per share as of May 31, 1941 and adding thereto the average earnings per share for the five-year period then ending. It is by applying this formula for all relevant computations that the accountants herein have arrived at the value of the corpus of the trust for the purposes of determining the applicable receiving commissions, paying commissions and annual principal commissions. To understand the scope of the objections to valuation now presented, it is sufficient to note that the formula employed by the accountants gives to the 400 shares on hand a worth of $164,400 which not only increases commissions but permits of double commissions. The objectants urge a valuation of $245 per share, their value when received, which would mean a valuation for corpus of $98,000, an amount for which but a single commission for both trustees could be allowed (Civ. Prac. Act, § 1548, subd. 6, par. [a]).
The statute (Civ. Prac. Act, § 1548, subd. 10) provides that “ [t]he value of any * * * personal property, to be determined in such manner as the court may direct, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions.” This language is identical with the language of corresponding sections of the Surrogate’s Court Act, except that the word “ surrogate ” is used instead of the word “ court” (Surrogate’s Ct. *183 Act, § 285, subd. 2; § 285-a, subd. 10; § 285-b, subd. 9). The correspondence between the commissions sections of the Civil Practice Act and those of the Surrogate’s Court Act has been the subject of judicial notice (Matter of Coutts, 260 N. Y. 128, 132; Matter of Lee, 3 Misc 2d 1072, 1080). The Surrogate’s Courts have repeatedly used valuations arrived at in transfer tax proceedings as a basis for computing receiving commissions. (Matter of Hoff, 186 Misc. 684, 686, affd. 270 App. Div. 891, affd. 296 N. Y. 650; Matter of Baldwin, 157 Misc. 692, 697, affd. 250 App. Div. 767.) They have also allowed commissions for receiving and paying out increases in the value of securities during administration (Matter of Richardson, 250 App. Div. 199, 200; Matter of Hawley, 142 Misc. 396, 397). Indeed, this conclusion is mandated by the plain legislative language that “ the increment thereof, received, distributed or delivered ” be taken into account as money in making commission computations. This is so to the extent that even if there are gains and losses, receiving and paying commissions are paid on the gross gains, i.e., without setting off losses against gains. (Matter of Pratt, 172 Misc. 756, 758.)
Upon the foregoing authorities and the applicable statute the court sustains the bases for computation of receiving and paying commissions used by the accountants herein. They rest upon the valuation arrived at by the Tax Court of the United States in Federal estate tax proceedings involving the sharply divergent views of the estate and of the Commissioner, and the computation of increment using a similar formula to that employed by the Tax Court. The court also sustains the method of computing the annual additional principal commissions which rests upon the application of that formula to ascertain actual value of principal for the applicable periods. Although subdivision 3 of section 1548 of the Civil Practice Act makes the value of a principal asset when received by a trust the presumptive value of the asset for computation of annual additional principal commissions, it also permits the trustee to use the actual value of the asset and the accountants have sustained the burden of proving actual values for the periods involved. In making this determination, the court is not unmindful of the fact that the objectants have not cited a single authority or urged more than their own conclusion for their contention that valuation must for all purposes be limited to $245 per share, the value determined as of October 22,1941. The objections in this respect are overruled.
Since the only asset of the trust consists of the 400 shares of stock and it is necessary to determine the source of funds for *184 payment of commissions, legal fees and related expenses, the accountants seek a construction of the restrictive by-law previously described and authorization for the sale of sufficient shares to produce the required funds, or, in the alternative, other directions in this context.
When the stock was placed in trust by Mr. Fry, all of the other stockholders of the corporation executed individual waivers of “ any and all rights which he may have as such stockholder pursuant to the aforesaid terms and provisions of said by-laws in so far as the same affects the six hundred (600) shares of stock * * * standing in the name of Ambrose Fry on the books of the corporation, and does further consent to the transfer of all the said shares of the said Ambrose Fry.” The waivers are unlimited in terms; they apply to all of the shares registered in Fry’s name; and they had the effect of releasing shares so registered from the scope of the by-law. This appears not only from the terms of the waivers themselves, but from the construction that has been given to them by the corporation and its stockholders who, without reference to or compliance with the restrictive by-law, and without objection, permitted transfer of 100 shares of the Fry stock to one Lang and another 100 shares to one Negley following Fry’s death in accordance with the dispositions made by his trust agreement. (Cf. Pomeroy v. Westaway, 189 Misc. 307, 309, 310, affd. 273 App. Div. 760.) The failure of any of the interested parties to oppose the accountants’ prayer for instructions in.this respect makes it unnecessary to review the other cogent arguments of the accountants for the construction now made, to wit, that the shares forming part of the corpus of this trust are free -from the restrictions imposed by section 5 of article VI of the by-laws on the transfer of the shares of stock of the corporation and that they may be freely offered for sale.
Objections have been filed to Schedule O-l relating to attorneys’ fees on this accounting. Unless the amount of fees can be stipulated between the attorneys for the petitioners and for the objectants, the issues raised by the objections will be heard before me on April 14, 1961 (Matter of Gilchrist, 286 App. Div. 869, 870).
Schedule K shall be corrected by reciting $66,400 as the amount of increase on distribution, and by recomputing receiving and paying commissions of Edward S. Bentley accordingly and shall also be corrected as noted in the supplemental affidavit sworn to February 14,1961.
The trustees have no cash on hand and hold a corpus consisting solely of 400 shares of stock. Commissions, legal fees and *185 expenses of this accounting are a charge against the corpus. The number of the remaindermen is such as to render it unlikely that all will join in contributing their prorata share of said charge against corpus in order to receive distribution in kind. Moreover, the nature of their remainder interests is such as to make it impossible to use any number of shares not divisible by 35 to achieve distribution in full share lots. Accordingly, the trustees will be authorized and directed to sell from corpus as many shares as may be necessary to fully pay the commissions, legal fees and expenses hereinabove referred to, and to permit of a distribution of the balance of the corpus in kind in full share lots. Cash in excess of such charges against corpus will then be distributed to the remaindermen pro rata to their remainder interests. Such sale shall be a public sale on not less than 20 days’ notice to all stockholders and remaindermen by mail and publication of notice of sale in the New York Times once.
A final order may be settled on notice to the attorneys for the objectants following disposition of the objections to Schedule C-l and the determination by this court of the amount that will be awarded thereunder. If no hearing is had, submit affidavit of services and as to disbursements, with order.